**John R. SALLEE, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 55375.**

Supreme Court of Missouri,
Division No. 1.

Dec. 14, 1970.

Louis C. Defeo, Jr., Jefferson City, for movant-appellant.

John C. Danforth, Atty. Gen., Craig A. Van Matre, Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Judge.

On June 28, 1967 movant (hereinafter sometimes referred to as defendant) was convicted of burglary in the second degree and stealing. See §§ 560.045, 560.095, and 560.110.[1] His punishment was fixed by the jury at seven years' imprisonment for the burglary and five years for the stealing. The judgment provided that the sentences run consecutively. Upon appeal this court affirmed. State v. Sallee, 436 S.W.2d 246. Thereafter, defendant filed the instant motion under S.Ct. Rule 27.26, V.A.M.R. to vacate the judgment. After holding an evidentiary hearing the trial court overruled the motion and defendant has duly appealed. He has been represented by appointed counsel at every stage of the various proceedings mentioned.

The points briefed by counsel for movant are that (1) he was denied the effective assistance of counsel which reduced his trial to a farce, (2) the cumulative effect of various trial errors deprived him of a fair trial, and (3) he was denied assistance of counsel at his preliminary hearing. Defendant has also filed a pro se brief. Therein he raises the above points and two additional points which will be hereinafter discussed.

A complete statement of the facts concerning the offenses here involved can be obtained from the opinion, supra, affirm-

---

1. Statutory references are to RSMo 1969, V.A.M.S.

ing the judgment on appeal. A very brief statement, which is perhaps necessary for an understanding of this opinion, is as follows: Between 6:30 p. m. December 20 and 12:30 a. m. December 21, 1966, the home of Mr. and Mrs. Robert D. Jennings, located in Clay County, Kansas City, Missouri, was broken into and personal property valued at about $1,200 was stolen. Among the items stolen was a packet of credit cards. One credit card stolen had been issued by Sears Roebuck and Company. On the early morning of December 21 Sears was notified of the theft of the card and at 10:30 a. m. on that date defendant purchased a number of items from Sears, using the Jennings credit card. He was identified by two salesmen.

Defendant was arrested on December 22. At that time he had in his possession a clipping from the yellow pages of the telephone directory listing the Sears stores in the area, and eight credit cards belonging to Jennings, as well as numerous other credit cards issued to other persons. He told one of the officers that he had purchased these credit cards from a colored person on the street during the evening of December 20 for the purpose of making purchases. Defendant signed a waiver for the search of the premises where he lived and the police found there items of clothing purchased from Sears with the Jennings credit card but apparently did not find any of the goods stolen from the Jennings home.

At the hearing on the 27.26 motion defendant testified that he had no attorney at the preliminary hearing because he had no funds to employ one; that he did not request the magistrate to appoint one but asked an assistant prosecuting attorney for one and was told the State did not have to appoint one; that about three months before his circuit court trial Mr. Stephen Crain was appointed to represent him. He complained that Mr. Crain did not talk with him about the case prior to trial and did not make any actual investigation of the matter. As to the manner in which his attorney conducted the trial defendant complained of the following: (1) that he refused to file a motion to suppress evidence obtained from a search of defendant's apartment because he said it was his opinion that there was no illegal search; (2) that he failed to object when advised by defendant that he had been taken into the courtroom before a part of the jury panel while handcuffed; (3) that he failed to object to testimony that defendant had in his possession a credit card issued to one Vardeman which had been taken in a burglary; (4) that he failed to object to testimony by an officer that defendant was identified by a police photograph.

On cross-examination defendant testified that he had been convicted of six felonies prior to the trial of this case; that at the time of his arrest he was under the influence of amphetamine sulfate, the effect of which was to give him a happy feeling but that he had all of his senses and knew what was going on; that he was brought into the courtroom once while handcuffed but, on another occasion while handcuffed, he passed the jury on the street during a recess.

Stephen Crain testified that this case was the second criminal case he had handled; that the first criminal case he had tried resulted in an acquittal; that realizing his inexperience he was zealous in his preparation of the case; that he took statements from each of the witnesses endorsed on the information, and consulted with a successful criminal attorney on a number of occasions concerning his trial tactics; that he believed defendant to be innocent and still believes that he is innocent, and prepared his case on that theory; that he spent twenty-seven hours in pretrial investigation; that everytime he was in Liberty he stopped at the jail to see defendant which probably totaled thirty visits; that because of defendant's prior convictions he did not want to have him testify and his trial strategy was to get before the jury, by cross-examination of State's witnesses, statements of defendant and oth-

er evidence which would support the theory that defendant purchased the credit cards; that he fully explained his trial strategy to defendant and he agreed with it; that he realized that the difficulty with his case was that defendant would be shown to have been in possession of the Jennings credit cards a very few hours after the burglary had taken place. He stated that his investigation led him to believe that there was no illegal search and seizure; that the identification photograph was not a "mug shot" although there was an inference that it was a police photograph; that at the time he did not think it would prejudice the defendant and he preferred not to object to its use because he was afraid that "would open up a pandora's box." He did not object to evidence concerning credit cards found in defendant's possession other than the Jennings credit cards because he thought that evidence supported the theory that defendant had purchased the cards rather than obtaining the Jennings cards in the burglary; that he did not remember seeing defendant while handcuffed and was certain that he was never led before the jury in handcuffs in the courtroom after the jury was impaneled; that he thought he had complained to the judge immediately after defendant mentioned the matter to him. On cross-examination he stated that he may have deferred making the objection because he had not seen defendant in handcuffs but finally did object because defendant was upset about the matter.

Clyde Hickman, Jr., a Kansas City police officer, testified for the State but his testimony was very similar to facts heretofore related concerning the original trial; also, there was testimony from Claude Fine who was a deputy sheriff at date of trial and who transported defendant back and forth from the courtroom to the jail. He stated that he could not remember about handcuffs on the first two days of the trial, although on the first day he did have two prisoners and usually, when he had two prisoners, he would keep them handcuffed until they were in the courtroom. He stat-

ed that on the third day he was asked by the judge about the matter and advised him that on that day he had taken the cuffs off defendant on the stair landing before reaching the floor upon which the courtroom was located.

The trial court's findings of fact were against defendant on all issues and the court concluded that defendant was thoroughly and ably represented by his appointed counsel.

At this point it should be mentioned that the burden of proving the grounds for relief is upon defendant and that upon appeal our review is "limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous." S.Ct. Rule 27.26(j).

As indicated the first point briefed is that the court erred in overruling the motion to vacate because defendant was denied effective assistance of counsel. In addition to the matters mentioned in defendant's testimony it is also suggested in the argument portion of his brief that counsel's opening statement reflected both inexperience and lack of preparation.

We think it should be here said that a convicted defendant who asserts that his attorney did not render adequate and effective legal assistance in accordance with constitutional standards has a heavy burden to sustain. This court has approved the statement that "the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. And common mistakes of judgment on the part of counsel, common mistakes of strategy, common mistakes of trial tactics, or common errors of policy in the course of a criminal case do not constitute grounds for collateral attack upon the judgment and sentence by motion under the statute. It is instances in which resulting from the substandard level of the services of the attorney the trial becomes mockery and farcical that the judgment is

open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel." State v. Worley, Mo.Sup., 371 S.W. 2d 221, 224. And we think the following is particularly applicable to the case at bar, i.e., "[t]he rule, as defendant contends, is well settled that a defendant is entitled to the effective assistance of counsel at all critical stages of his trial. Williams v. United States, 8th Cir., 402 F.2d 548. However, most of the omissions of which defendant complains were trial decisions and it is the established rule that an appellate court will not review or reassess by hindsight the judgment of defense counsel on questions of strategy, trial tactics, or trial decisions. See Holt v. State, Mo. Sup., 433 S.W.2d 265[3], Holbert v. State, Mo.Sup., 439 S.W.2d 507[2], State v. Keeble, Mo.Sup., 399 S.W.2d 118[16], and Bruce v. United States, 126 U.S.App.D.C. 336, 379 F.2d 113 (1967)." Cheek v. State, Mo.Sup., 459 S.W.2d 278 (adopted November 9, 1970).

■ Most of the matters of which defendant complains come within the classification of trial strategy or tactics and, as indicated, we will not second-guess his attorney on those matters. We might say, however, that it appears to us that the case was well prepared and well tried. Counsel developed a reasonable theory of defense which could be presented without defendant's testimony. His cross-examination of the witnesses elicited the testimony necessary to support that defense. A substantial portion of his capable argument was devoted to developing his trial theory.

■ As heretofore stated defendant has criticized the opening statement. It was quite brief but we do not consider this point to be important because we know that many capable attorneys waive the opening statement entirely in some criminal cases. Moreover, we can well understand that counsel would be reluctant to outline at the beginning of the trial the facts he intended to prove when he would be compelled to rely on cross-examination of the State's witnesses for such proof.

■ The other matter complained of which would not be said to be trial tactics is the alleged failure to object promptly to the alleged fact that defendant was taken into the courtroom in handcuffs in sight of some of the jury panel. The evidence on this point is rather vague. We note, however, that the trial court found that "movant has not borne his burden of proof to show by preponderance of the evidence that he was displayed to the jury while in handcuffs. His lawyer never saw this occur. The prosecutor who tried the case denied at the time that it happened. This court did not observe the movant in handcuffs. The deputy sheriff had no recollection of the first day of the trial, but recalls that the handcuffs were removed from movant before he reached the floor of the courthouse where the trial was held the times he does recall. The only testimony that it did happen comes from an interested party who has six prior felony convictions." We defer to the trial court's findings on this point.

We agree with the conclusion of the trial court that defendant had the effective assistance of counsel in his defense and hence we rule that the findings and judgment of the trial court upon that issue are not clearly erroneous.

■ The next "Point Relied On" is that the trial court erred "in overruling appellant's motion to vacate for the reason that the admission of evidence of unrelated offenses, the admission of evidence which was the fruit of an unlawful search, the placing of appellant before the jury panel restrained by handcuffs, and the inflammatory comments by the prosecuting attorney compounded so that the cumulative effect of these errors was to deprive the appellant of a fair trial." We decline to consider this point. Supreme Court Rule 27.26 plainly provides that a motion to vacate cannot be used as a substitute for direct appeal or for a second appeal to review

trial errors. We view this point as a subterfuge to obtain a review of a number of trial errors by simply saying that they caused defendant to be deprived of a fair trial.

 The final point in the brief filed by counsel is that the court erred in failing to vacate the judgment because defendant was denied assistance of counsel at his preliminary hearing. He recognizes that this court has uniformly held that counsel need not be appointed for indigent defendants at a preliminary hearing but he seeks reconsideration of our holdings in the light of Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387. Coleman was decided June 22, 1970, and we have held that it will not be applied retroactively. State v. Caffey, Mo.Sup., 457 S.W.2d 657. This point is accordingly overruled.

■ As heretofore stated, defendant has raised two additional points in his pro se brief. The first is that some of the State's witnesses have testified falsely on the hearing of his motion and hence the court erred in not taking judicial notice of such and granting appropriate relief. The point cannot be sustained. Perjury at the hearing of a 27.26 motion is not ipso facto a ground for vacating the judgment. This would simply appear to be another way of saying that the trial court erred in finding the facts contrary to defendant's contentions. We have ruled that the findings of the court were not clearly erroneous and that ruling is decisive of this point.

■ The remaining point is that the "trial court and its court officials knowingly, deliberately, willfully accepted into evidence in appellant's 27.26 evidentiary hearing, false testimony against appellant knowing same to be false, thereby depriving appellant of a fair and impartial hearing * * *." We do not think any relief can be granted on this point. It is raised for the first time on appeal (which our rules do not permit) and there is no proof to sustain it. If there was false testimony it should have been disclosed in the trial court by rebuttal testimony, or, if such was not available at that time, it could have been raised in a motion for new trial and proved at the time that motion was heard. In the situation presented this point is without merit and is disallowed.

Judgment affirmed.

BARDGETT, J., concurs.

SEILER, P. J., concurs in result.