Frederick BROWN, Jr., Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 55639.

Supreme Court of Missouri, Division No. 1.

April 12, 1971.

**564**

Phillip J. Paster, Blumenfeld, Kalishman, Marx & Tureen, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HOLMAN, Judge.

Movant (hereinafter referred to as defendant) has appealed from an order of the circuit court overruling his motion to withdraw his pleas of guilty and to vacate filed pursuant to S.Ct. Rules 27.25 and 27.-26, V.A.M.R.

Defendant, in 1966, was charged with murder in the first degree and also with first degree robbery by means of a dangerous and deadly weapon. On the day set for the trial of the murder charge the trial began and, after 24 prospective jurors had been examined on voir dire, the defendant withdrew his plea of not guilty and entered a plea of guilty. He was sentenced to life imprisonment. A similar plea was entered to the robbery charge and he was also sentenced to life imprisonment on that charge, to be served concurrently with the prior sentence.

At the time the pleas were entered the assistant circuit attorney made the following statement concerning the occurrence (which defendant agreed was substantially correct): "On November 27, 1966, this defendant, Frederick Brown, Jr. and another young man named Sanford Thomas, along with a group of other young people, went downtown in somewhat of an old jalopy automobile; this defendant and Sanford Thomas got into a taxicab that was then operated by the deceased, John Dougherty, and they rode with him to a particular spot in North St. Louis. Either during the course of the ride, or at the conclusion of the ride, they robbed John Dougherty of some money that he was carrying on his person, and John Dougherty was stabbed to death in the chest by a small-bladed or medium-bladed knife. This defendant and Thomas then ran from this taxicab and proceeded to a home where he gave the knife to a man by the name of Pursley Niles, and Niles then hid the knife in an area close to defendant's home. The defendant then told Niles and some of the other associates that he robbed a cab driver. The defendant was then informed by some of his young friends that the cab driver was dead. This defendant * * * knew Detective Sergeant Troup, and Troup was called by himself or someone in his behalf, and along with Phillip Jones, a detective from the 4th District, they went out and met this defendant and recovered the knife from Pursley Niles and, at Niles' direction,

recovered a watch taken from the deceased, Dougherty, during the course of the robbery; recovered a burned wallet and many papers that were in the wallet, partially burned, bearing the name of John Dougherty, in a trash can behind this defendant's home."

After his arrest defendant waived his right to have a lawyer present during interrogation and told the police that "he was the one who participated in the robbery of the cab driver; he was the one who plunged the knife into the cab driver's chest." Defendant was 17 years old on the date of the offenses and 18 at the time his pleas were entered.

In his motion defendant alleges that he should be permitted to withdraw his pleas of guilty and enter not guilty pleas because (1) the pleas of guilty were involuntary and thus in violation of the Fifth and Fourteenth Amendments to the U. S. Constitution; (2) that the entry of the pleas of guilty was a denial of due process because the trial court failed to determine whether they "were made voluntarily or under duress, and that the accused understood the nature of the charges and that he had a constitutional right to enter a plea free of coercive influences"; and (3) that defendant was denied "the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution in that assigned counsel failed to advise defendant of his constitutional rights and privileges; assured him of the death penalty if he went to trial; promised him a life sentence upon a plea of guilty and otherwise unlawfully influenced, coerced and induced pleas of guilty to the charges."

Supreme Court Rule 25.04 provides that "[a] defendant may plead not guilty or guilty. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge." A review of the transcript relating to the entry of the pleas of guilty shows that the court used meticulous care in fully complying with the quoted portion of the rule. In addressing the defendant in regard to each charge the court advised him (1) that he was entitled to a jury trial and, if found guilty, a right of appeal thereafter, and (2) that by pleading guilty he waived the right to jury trial. The court ascertained from defendant that he (1) understood the range of punishment, (2) had been advised by his attorney and his mother to enter pleas of guilty, (3) knew what he was doing and was not pleading guilty by reason of any threats or promises, (4) was guilty of the acts related by the assistant circuit attorney, and (5) was satisfied with the advice given him by his attorney, Mr. Noskay.

Defendant testified that Mr. Noskay talked with him on October 18, 1967, and advised him to plead guilty to both of the charges; that his mother, his grandmother, and a deputy sheriff were also present; that Mr. Noskay told him that if he went to trial he would get the death penalty but that if he pled guilty he would receive a life sentence but would not be in prison long, "I took it—come back in two or three years, but I kept insisting that I wanted to go to trial"; that he did not understand that there were two separate charges but thought they were together; that the trial started and the attorneys started asking the jurors questions; that he heard the assistant circuit attorney asking them about the death sentence and he became afraid of the death penalty; that after about 25 minutes he told his lawyer he was ready to plead guilty. Defendant further testified that he had gone to school until he was in the 8th grade (special) but that he couldn't spell and couldn't read; that at the time of the appearance in court he could not read or write; that at the time the plea of guilty was entered the judge asked him if he understood that he could not withdraw the plea later and he answered, "yes," but that he actually didn't understand that he could not withdraw his plea of guilty.

A record of the Board of Education showing the result of a number of aptitude tests made over a period of years, and indicating that defendant's I.Q. ranged from 70 to 78, was admitted in evidence. This record disclosed that the last test, made in February 1964 when defendant was 14 years old, showed that he had a mental age of slightly more than 10 years.

Also offered as a witness was Dr. Robert Minnihan, a psychiatrist, who was Director of the St. Louis Child Guidance Section. He testified that he examined defendant for about 45 minutes in June 1964 and concluded that he had elements of a schizoid personality and that he had a dull, normal intelligence; that he was a borderline between dull, normal intelligence and mild mental retardation. He stated, however, on cross-examination that defendant had the ability to reason properly.

Velma Rankins, defendant's grandmother, testified that Mr. Noskay told defendant that if he pleaded not guilty he would get the death sentence but if he would plead guilty he would not be in the penitentiary more than "maybe seven years"; that a deputy sheriff present at the time said, "Hurry up, do something, plead guilty and get it over with."

On behalf of the State Mr. Noskay testified that he had been the Public Defender in St. Louis since March 1942; that an attorney from his office talked with defendant in December 1966 and, on January 3, 1967, he (Noskay) had filed a motion for appointment of a psychiatrist to examine defendant. The motion was sustained and defendant was sent to Malcolm Bliss Mental Health Center for the examination; that a report of the examination was filed in court on June 30, 1967. Thereafter, he filed a motion to suppress defendant's confession or admissions, which was overruled prior to trial; that at sometime prior to trial he talked with defendant and explained the nature of the charges; that he explained the three possible verdicts in the event of a trial which were: guilty with assessment of death penalty, guilty with assessment of life imprisonment, and not guilty; that he recommended to defendant that he enter a plea of guilty if he could get an assurance that the State would recommend life imprisonment, and that he also discussed this with defendant's mother and grandmother.

Mr. Noskay further testified that the defendant declined to accept his recommendation and the trial of the case started; that after two panels had been examined on voir dire, however, the defendant advised him that he would enter a plea of guilty if the State would recommend life imprisonment on each offense, and shortly thereafter the pleas of guilty were entered. On cross-examination he stated that he had thought defendant could read and write; that he didn't discuss with defendant the idea of a non-jury trial because defendant wanted a jury trial and he (Noskay) thought it was better for the jury to pass on the punishment than it would be for the Court; that he didn't discuss with defendant the procedure of taking a change of venue because he was of the opinion that St. Louis was the best place to try the case; that he didn't advise defendant that if he pleaded guilty he would waive the right to appeal because he thought defendant understood that if he entered a plea of guilty there would be no right to appeal such a plea.

At the time the motion was overruled the trial court made the following findings: "That defendant's counsel, Joseph Noskay and other attorneys of his staff in the Public Defender Bureau, did consult with defendant on several occasions prior to the date of trial; that Joseph Noskay conferred with defendant and his mother and grandmother before the commencement of trial on October 18, 1967, and advised that defendant enter a plea of guilty if he could get a life sentence. * * * That if the case were tried there were three alternatives for the jury, namely: to find defendant not guilty; to find defend-

ant guilty and assess his punishment at life; to find defendant guilty and assess his punishment at death. * * * That if he were found guilty he would have the right of appeal. That in answer to questions from the Court, defendant stated that there had been no threats or promises made to him; that the defendant, though having a dull normal intelligence, had the ability to reason. * * * That the defendant informed his attorney that he wished to enter a plea of guilty; that there was no coercion from defendant's counsel inducing the plea of guilty. That defendant's plea of guilty to the charges was voluntarily made after an extended interrogation of defendant by the Court; that the defendant understood the questions of the Court and answered all questions; that the evidence of movant's reading ability is insufficient to establish an inability to read. That the defendant's plea was voluntary and not the result of coercion, duress, fear and threat of the imposition of the .death penalty. Informing the defendant of the range of punishment is the duty of defendant's attorney and the fact that the death penalty could be imposed does not amount to coercion. That defendant's counsel, Joseph Noskay, is an attorney of considerable experience and of outstanding competence in the field of criminal law."

At the outset of our consideration of this appeal it should be stated that the burden of proving the grounds for relief is upon the movant and that upon appeal our review is "limited to a determination of whether the findings, conclusions and judgment of the trial court are clearly erroneous." S.Ct. Rule 27.26(j). In considering the contention that defendant should be permitted to withdraw his pleas of guilty under Rule 27.25 we note that it is only to correct manifest injustice that "the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

■ The first point briefed by defendant is that the trial court erred in over-

ruling his motion because the evidence showed that he did not understand the nature of the proceedings, or of either of the charges at the time he entered his pleas of guilty, and that such were not voluntary because "made on the basis of coercive influence and promises made to movant." The facts found by the trial court are clearly adverse to the various elements of this contention. We have concluded that those findings are not clearly erroneous.

It is true that defendant at the time of an examination made more than three years before his pleas were entered was shown to have a dull, normal intelligence and that certain tests made about that time (1964) indicated a mental age of slightly more than ten years, although his actual age was 14. However, our examination of the transcript has caused us to agree with the findings of the trial court that defendant had the ability to reason, that he understood the nature of the proceedings and of the charges, and that he voluntarily entered his pleas of guilty without being motivated by any threats or promises. The evidence on the hearing of the motion and a summary of the proceedings when the pleas were entered are heretofore stated in some detail and need not be restated in this connection. The trial court obviously did not believe defendant's testimony that his attorney had told him that he would receive the death penalty if the case were tried and he was convicted, but would be released from prison in two or three years if he entered a plea of guilty, and we agree with that conclusion. Needless to say the record supports the findings herein indicated.

At the time the pleas were entered the defendant made some statements which indicated that he did not fully understand the legal proceedings that were taking place. However, those matters were apparently cleared up by further explanation and do not appear to be of consequence. In support of his contention defendant has cited State v. Bursby, Mo.Sup., 395 S.W.2d 155, State v. Holland, Mo.Sup., 411 S.W.2d 181,

and State v. Arnold, Mo.Sup., 419 S.W.2d 59. We have considered those cases but have concluded that they do not aid defendant in the factual situation here involved. As indicated, we rule this point adversely to defendant.

The remaining point briefed is that the trial court erred in overruling defendant's motion for the reason that defendant was denied effective assistance of counsel in violation of his constitutional rights. In considering this contention we should bear in mind that "a convicted defendant who asserts that his attorney did not render adequate and effective legal assistance in accordance with constitutional standards has a heavy burden to sustain. This court has approved the statement that 'the constitutional right to the effective assistance of counsel does not vest in the accused the right to the services of an attorney who meets any specified aptitude test in point of professional skill. And common mistakes of judgment on the part of counsel, common mistakes of strategy, common mistakes of trial tactics, or common errors of policy in the course of a criminal case do not constitute grounds for collateral attack upon the judgment and sentence by motion under the statute.'" Sallee v. State, Mo. Sup., 460 S.W.2d 554, 557.

Defendant complains of omissions of his attorney in four respects, i. e., (1) that he failed to ascertain that defendant could not read and write and to prove that fact in presenting the motion to suppress the defendant's confession, (2) that he failed to advise defendant of the right to a jury-waived trial, (3) failed to advise defendant that he waived the right to appeal by pleading guilty, and (4) failed to advise defendant of the right to a change of venue prior to trial.

We agree with the finding of the trial court that defendant was represented by an experienced and competent attorney who fully advised him of his substantial rights. The matters now complained of do not appear to be of substance and even if as-

sumed to be true would not support a finding of ineffective assistance of counsel. The trial court did not believe defendant's testimony that he could not read or write. And we think his attorney reasonably assumed that defendant, who had completed the eighth grade (even though a special class), could read and write. Moreover, even if the written confession had been suppressed on that ground defendant's oral statement would apparently have been admissible.

■ There was no occasion for Mr. Noskay to discuss a jury-waived trial with defendant. In the first place he was not entitled to such as a matter of right as Rule 26.01 provides for such only if the court assents. Furthermore, Mr. Noskay indicated that he considered that possibility and decided against it because defendant had stated he wanted a jury trial and that he (Noskay) thought it would be better for the jury, rather than the court, to fix the punishment in such a serious case. That was a tactical decision which we think counsel appropriately made.

■ There is clearly no substance in the contention that counsel should have advised defendant that he waived the right to appeal by pleading guilty. Anyone mentally able to enter a plea of guilty would understand that it is a confession of guilt. There is no appeal from that kind of judgment and we do not consider that the attorney was remiss in failing to point out that fact. He had already advised defendant that he would have a right to appeal if he were convicted on a trial and that was sufficient advice on that subject.

■ We also do not consider that there is any merit in the contention that counsel should have advised defendant of his right to take a change of venue. No doubt there had been some publicity concerning the case but Mr. Noskay testified that in view of the jury panels being used in other counties he considered St. Louis the best place to try the case. This was a tactical

decision which counsel could properly make.

In summary, it is our view that the findings, conclusions, and judgment of the trial court were not erroneous and we find no manifest injustice in the proceedings which would warrant a decision permitting the withdrawal of defendant's pleas of guilty. The motion was properly overruled.

Judgment affirmed.

BARDGETT, J., concurs.

SEILER, P. J., concurs in result for reasons stated in concurring opinion in State v. Wilkinson, Mo.Sup., 423 S.W.2d 693, 699.