**STATE of Missouri, Respondent,**

v.

**Jerome HOLLAND, Appellant.**

No. 52472.

Supreme Court of Missouri,
Division No. 1.

Feb. 13, 1967.

Norman H. Anderson, Atty. Gen., Louis C. Defeo, Jr., Asst. Atty. Gen., Jefferson City, for respondent.

J. Whitfield Moody, Robert E. Meacham, Kansas City, for appellant.

HENLEY, Judge.

Defendant appeals from an order overruling his motion to withdraw his plea of guilty to a charge of murder in the first degree and to set aside the judgment imposing a sentence of life imprisonment.

Defendant was charged by information filed June 29, 1965, with murder, first degree; specifically, the charge was that he shot and killed one John Henry Allen Mathew with a shotgun on May 18, 1965, in Jackson county. He was represented at the preliminary hearing in magistrate court and in the circuit court by Mr. Richard B. Kirwan of the Kansas City bar, counsel employed by his family. At his arraignment on June 30, 1965, he entered a plea of not guilty and the case was set for trial for the following September 13.

On October 25, 1965, he appeared in court in person with his counsel, withdrew his plea of not guilty, and entered a plea of guilty. The court accepted his plea and, as stated, sentenced him to imprisonment for life. Judgment was entered accordingly.

Thereafter, on December 29, 1965, while in custody serving his sentence, defendant filed a motion to withdraw his plea of guilty and to set aside the judgment and sentence. The motion was heard on March 10, 1966, by the Honorable J. Donald Murphy, the same Judge who accepted defendant's plea of guilty. Defendant appeared in person at the hearing and was represented by court-appointed counsel, Mr. Robert E. Meacham of the Legal Aid and Public Defender Society of Kansas City. After his motion was overruled, the court, on defendant's request, ordered that he be permitted to perfect this appeal in forma pauperis; the same counsel was appointed to represent him on appeal; counsel has filed a brief and presented oral argument in this court.

In his brief he relies on two grounds alleged in his motion as reasons for setting aside the judgment and sentence and permitting him to withdraw his plea of guilty. First, he contends that the court erred in overruling his motion, because the plea was entered equivocally. He asserts that for this reason the court should not have accepted his plea and should have entered a plea of not guilty as required by Rule 25.04, V.A.M.R. Second, he contends that at the time of his plea he " * * * was under a misapprehension of law and fact * * * " in that: (1) " * * * he was not informed of the lesser degree of homicide and the lesser punishments that could be imposed upon him * * *; " and (2) he believed that if the case was tried a jury would impose a death sentence, because at the time of the alleged offense he had been convicted of murder twice before, sentenced to life imprisonment, was on parole from the penitentiary, and the parole had been revoked.

The transcript on appeal includes: defendant's motion; testimony of defendant and his former attorney, Mr. Kirwan, at the hearing on the motion; the court's findings of fact, conclusions of law and order overruling the motion; the information; a transcript of the proceedings had when defendant entered a plea of guilty; and, the sentence and judgment.

Defendant, a negro male who had spent approximately half of his life in the penitentiary under two prior sentences for murder (the second of which was committed while an inmate of the penitentiary), testified at the hearing on his motion that at the

time he entered a plea of guilty to the murder of John Mathew he was not mentally competent to enter a plea; that he desired that the court appoint a doctor to determine his competency; that he entered a plea of guilty after consultation with and advice from his counsel and his sister; that he did not understand the advice given by his counsel, but did understand part of what the trial judge had said at the time of his plea; that he helped another inmate prepare this motion. He further testified that " * * * to a certain extent * * * " he was coerced or forced to admit his guilt; that he was not "threatened" by anyone, but " * ⸜ * was more what you would say persuaded * * * that's the word I would use, * * * because * * * I was held with a threat that if I did * * * go before a jury, on account of I had been to the penitentiary for the same charge, that I would get the gas chamber * * *." He further testified that he was "quite sure" he was mentally competent "now," but that at the time of his plea of guilty was "mixed-up" and " * * * couldn't have been at myself * * *."

R. B. Kirwan testified: that he conferred and advised with defendant several times before the plea of guilty was entered; that on one of those occasions defendant's sister was present; that he very carefully went over the facts of the case with defendant and his sister, and explained to him the advantages and disadvantages of a jury trial and the possible results of a trial in the light of those facts; that he did not advise or influence defendant to plead guilty; that he left that decision to defendant; that defendant " * * * was worried like every man would be under that situation * * *," but that, in his opinion, defendant " * * * was thoroughly competent and knew what he wanted to do * * * " and " * * * made his [own] decision * *;" that there was no doubt in his mind that defendant knew and understood what he was doing when he pled guilty.

At the close of evidence on the motion the court ordered that defendant be delivered to the Psychiatric Receiving Center of Jackson county for examination and report as to his mental condition by Dr. Albert Owre, Jr. Dr. Owre made the examination and filed his report with the court. Briefly, the examination revealed that defendant's " * * * fund of knowledge and information is adequate * * *, his intelligence * * * normal." The psychiatric diagnosis was: "Sociopathic Anti-Social Reaction, manifested by repeated acts of murder, associated with absence of conscience."

The transcript discloses that on arraignment the court informed defendant of the nature of the charge against him and the punishment therefor. On the date the plea of not guilty was withdrawn and the plea of guilty entered defendant was accompanied in court by his sister, Mrs. Tressa Gilliam, as well as his counsel. Before accepting the plea the court heard a summary of the facts from counsel for the state, and then more or less informally discussed the case with defendant, his sister and his counsel. Briefly, the facts stated by counsel for the state were: that there was an altercation between deceased and defendant in which defendant received a cut on his hand on Friday before this homicide on Tuesday evening; that on this Tuesday evening John Mathew was at Gates Exterminating Company seated in a chair watching television; that defendant walked in with a shotgun, told Mathew to stand up, and shot him inflicting a mortal wound in Mathew's neck; that defendant immediately left the premises and surrendered himself to the police; that police searched for. but found no weapon on deceased's body. The discussion between the judge, defendant, his sister, and counsel developed that defendant is a 56-year-old single man with a 10th grade education who, for the short time he had been out of the penitentiary, was employed as a porter. During this discussion defendant stated that the deceased had attacked him that evening and that he (defendant) had shot when he was ten or twelve feet from deceased.

When asked whether he knew that the least punishment for first degree murder was life imprisonment, defendant indicated that he did not know that, but upon being reminded by his attorney that he had explained this to him, defendant replied: "Well, it wouldn't make any difference. They revoked my parole so it would be all the same." As a result of an inquiry by the court as to whether defendant had had a mental examination since his release on parole, defendant expressed a desire for such examination, but when asked whether he thought there was something wrong with him mentally, he replied: "I don't think it is, Judge." Although Mrs. Gilliam said she thought there was "something wrong" with her brother, she agreed with Mr. Kirwan that defendant "understood" their previous conversation, and this discussion, and " * * * was capable of making up his own mind what he should do."

After reviewing the evidence heard on the motion, the psychiatrist's report, and the proceedings had at the time of his plea of guilty, the court found and determined that " * * * there was an intelligent and conscious intent on the part of the defendant to plead guilty to the charge of murder in the first degree; that he did not lack mental capacity to understand the proceedings against him; that the plea was voluntarily entered with full knowledge of the consequences; that * * * defendant was adequately represented at the time of his plea * * * ; that defendant was neither coerced nor misled into pleading guilty * * * ; and, that the only 'duress' to which the defendant was subjected was the necessity of a choice between pleading guilty or standing trial."

In State v. Kellar, 332 Mo. 62, 55 S.W. 2d 969, l.c. 972, the court said: " 'The withdrawal of the plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. Therefore,

the court ordinarily will permit a plea of guilty to be withdrawn if it fairly appears that defendant was ignorant of his rights and of the consequences of his act, or was influenced unduly and improperly either by hope or fear in the making of it, or if it appears that the plea was entered under some mistake or misapprehension. Ordinarily it will not be granted, however, where the plea was entered voluntarily without any undue influence, or where no reason whatever was assigned for the change.' "

Our Rule 27.25, V.A.M.R., provides that "A motion to withdraw a plea of guilty may be made only before sentence is imposed * * * ; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his plea."

We have reviewed and considered the whole record in this case and arrive at the same conclusion reached by the trial court. We conclude that defendant was fully informed and understood from his conferences with counsel described by the court as " * * * a competent and conscientious lawyer of vast experience * * ," from his discussions with the able and conscientious trial judge, and from his own experiences, the full and complete nature of the charge against him, his possible defenses, and the minimum and maximum punishment therefor prescribed by the law. We conclude that his plea of guilty was unequivocal; that it was a definite, categorical plea, intentionally made with an understanding of the consequences, after careful consideration of what appeared to him to be his chances of acquittal or conviction and the imposition of less or greater punishment at the hands of a jury.

We have examined those parts of the record required to be reviewed by Rule 28.02, V.A.M.R. No error appears therein.

The judgment is affirmed.

All concur.