James Lee FRANKLIN, Movant-Appellant,

v.

STATE of Missouri, Respondent.

No. 54240.

Supreme Court of Missouri,
Division No. 2.

June 8, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied July 13, 1970.

David G. Lupo, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

On July 1, 1944, following a jury verdict of guilty and assessment of the death penalty, James Lee Franklin was sentenced to life imprisonment for the murder of a three year old girl. In this postconviction proceeding, provided by Rule 27.26, V.A.-M.R., he sought to have the judgment and sentence vacated. After an evidentiary hearing, relief was denied and this appeal followed.

Movant, then twenty-one years of age, lived in the same general neighborhood in the city of St. Louis as did the small girl. Briefly, as shown by the evidence, he enticed her on May 3, 1943, to take a ride with him on a streetcar. After one transfer they arrived at Forest Park where he raped and murdered her. The death was caused by numerous stab wounds. After placing her body in a culvert or underpass, movant returned to his home. Approximately four hours later, he was arrested and orally confessed his guilt before several police officers and newspaper reporters. The confession was later reduced to writing. The alleged murder weapon, a pocket knife, was given to the police by movant's mother. On the following day, he was charged with murder in the first degree. Such other facts as may be relevant will be more meaningful if related while considering each of the specific issues raised in this proceeding.

It is first asserted that movant is entitled to a new trial because of the state's inability to provide a full transcript of the original trial. Argument is made that, absent a transcript, he was "prejudiced and prevented from asserting an adequate case to sustain his burden in connection with his motion" and thus has been denied due process. It is then concluded that: "The State must bear the burden for failure to provide these notes." Movant's counsel is aware of the holding in Norvell v. Illinois, 373 U.S. 420, 83 S.Ct. 1366, 10 L.Ed.2d 456, but contends the instant case is factually distinguishable. In Norvell the defendant was indigent, but had counsel for his trial and presumably had services for purposes of an appeal which was not taken. In a later post-conviction proceeding, his request for a transcript was denied because the court reporter was deceased and other reporters could not transcribe his notes. The inability of the state to provide the transcript was found by the Supreme Court not to be a violation of either due process or equal protection. Nor was it, standing alone, grounds for setting aside the conviction. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. In the instant case, movant was represented by self-employed counsel at his original trial and presumably could have perfected an appeal at that time. In this proceeding, approximately twenty-five years later, the reporter's stenographic notes could not be found. With court supervision, an exhaustive search to no avail was made through all stored reporter notes for the trial courts of the city. One of two of the reporters who had been used at trial aided in the search. It is argued that in Norvell the state could not have prevented the reporter's death, but here the state assumed the duty of retaining stenographic notes and negligently failed to do so. We do not believe the distinction submitted is so persuasive as to bar our application of the holding in Norvell. Absent some showing of state related interference with the preservation of the stenographic notes, the great lapse of time is a sufficient ex-

planation for their loss. In particular, the facts as shown are not indicative of any invidious discrimination by the state. As we said in State v. Keeble, Mo., 427 S.W.2d 404, at 409: "If the notes or the reporter are no longer available and the notes cannot be transcribed, then the situation is not different from that where a witness who would have had knowledge is deceased and the testimony is no longer available in connection with a motion under Rule 27.26. Under those circumstances, the question would have to be determined on the basis of whether, under the evidence offered, the defendant had sustained his burden of showing he is entitled to relief under Rule 27.26." State v. Davis, Mo., 438 S.W.2d 232, 235. Although the record shows movant made requests to obtain a transcript and post-conviction review, some twelve to thirteen years after the trial in both 'state and federal courts, and which were all denied, an opposite conclusion could not be justified. In addition, present counsel in preparation for the proceeding under Rule 27.26 by diligent effort developed evidence on most issues now raised.

Second, it is argued that movant was denied the effective assistance of counsel in defense of the murder charge. This conclusion, in retrospect, is based on numerous alleged omissions of trial counsel. Each will be noted without extended comment as to whether or not they may be considered in this proceeding.

As the record shows, movant first appeared at arraignment while represented by the Director of the Public Defender Bureau. A motion was filed requesting appointment of psychiatrists for examination of movant. It alleged "defendant [movant] * * * does not know the difference between right and wrong." That he "anticipates his plea to be Not Guilty by reason of Insanity; that the case is of such universal magnitude and importance in the public eye that the opinion of more than one psychiatrist would be necessary to establish said defense; that your movant (the attorney) is Director of the Public

Defender Bureau, representing defendants who have no previous conviction of a felony and are indigent, hence the defendant in this cause has no funds wherewith to employ private experts. * * *" Such examinations were made and the report of each is available. Dr. Grogan reported: "In my opinion the defendant understood well the nature of the act of which he is accused and was fully capable of distinguishing right from wrong as related to this particular act * * * defendant * * * is subject to such overwhelming emotional impulses that for the moment he becomes quite irresponsible for his actions." Dr. Lee stated: "He has been found to possess average intellectual capacity but to be defective in judgment, to be immature socially and emotionally. * * * As far as the Clinic has been able to determine, the patient is able to distinguish between right and wrong. It is not unlikely however, that the crime may have resulted from 'an irrestible impulse', in spite of the patient's ability to differentiate between right and wrong." Dr. Sassin concluded: "It is my impression that this individual is mentally dull and can be classed in the low average intellectual group, but he is far above the feeble minded level. Apparently he has been subject to some impulsive actions, most of which he has had no control over, his only difficulties being in the sexual field. He answers questions relevantly and alertly. He was frank and truthful and had an excellent memory for his past experiences. I was able to establish good rapport with him and had no difficulty in getting information. Physical examination was essentially negative. He does not show any evidence of involvement of the Central Nervous System. There is no evidence of a Psychosis, and it is my opinion he is fully responsible for his acts." Each of the three examinations was made during the month of June, 1943.

During the month of September, 1943, employed counsel entered his appearance and the public defender was allowed to withdraw. Apparently new counsel, being

cognizant of the medical reports as indicated, had movant examined by a Dr. Lytton with the hope there would be some evidence to present in defense. The transcript of the present proceeding includes a copy of his findings. It is dated October 16, 1943, and consists of eight typewritten single spaced pages. Since the trial started two days later on October 18, it is not shown if this report was brought to the attention of the trial court prior to or even during trial. Nevertheless, we have examined the report of Dr. Lytton word by word and sentence by sentence and can not find any suggestion that movant did not have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding * * * as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824. In fact, those portions of the report, which fairly could be considered as directly relevant to the issue of "competency to stand trial" indicate clearly that movant was. For instance: "He was friendly, unusually honest and frank, and seemed to be quite aware of the seriousness of his situation and of the possibilities of the outcome. * * * I feel that the patient tried in no way to pretend to deny his guilt or to squirm out of the consequences. He said that someone told him to act crazy but that he would not do that because he did not think that was right, and that he felt that good doctors would be able to determine his condition regardless of how he acted." In summary Dr. Lytton stated, in part: "There is no question about the fact that this patient knows the difference between right and wrong, but this does not mean that he is sane, because there are very few mentally ill patients who do not know the difference between right and wrong." Some of the details found in the life long history of movant, as related by Dr. Lytton, will be set out with only a presumption defense counsel was aware of each of them. They include a history of epileptic attacks which have become less severe with time, several fights with class-mates, interest in Sunday School and perfect attendance, a love for dogs and cats, a quick temper over trivial things from which he quickly recovered, with adolescence he became more secluded, masturbation to an extent the father offered to take him to a house of prostitution, leaving school in the seventh grade, numerous jobs, obsession for attending picture shows, interest in knives, intercourse with girls near his age, an attempt at sodomy with a young boy and one encounter with the law. The latter occurred while he was thirteen or fourteen. He thought a young boy had killed one of his pups and he had complained to the boy's older brother. He later caught the same boy hurting another pup and stabbed him. For this he was committed to the home for retarded children or "feeble minded" at Marshall. Within two or three months he was discharged, and later took NYA training in radio and gardening. One other conclusion of Dr. Lytton is of interest on the particular issue. It is: "* * * as you look at him and talk to him *at this time* you can hardly believe that he could commit the crime that he admits committing." (Emphasis added.)

▇▇▇ With this background, failure of trial counsel to request a preliminary hearing on the question of movant's competency to stand trial, is claimed to be evidence of ineffective counsel. As shown by the medical information herein discussed, this attack on trial counsel can not be sustained. There was no suggestion whatever that movant was unable to cooperate in his defense and fully appreciate the proceedings against him. In fact, all evidence, including particularly that of his own medical witness, Dr. Lytton, established this fact. Nor is there any factual or legal basis for charging the trial court with error for not calling on its own initiative a pre-trial jury to hear evidence on and resolve the question of "competency to stand trial." The duty to have done so would have been mandatory at that time under the provisions of Section 4046, RSMo 1939, if the court had "reason to believe" movant was insane

at time of trial. Of necessity, the evaluation of all facts and circumstances known to exist at time of trial was a duty of the trial court, and from which he had to determine if there was "reason to believe" movant was presently incompetent under the standard previously quoted. From the record, it is shown the court concluded otherwise. Nor is reversible error shown when the question is considered in light of recent decisions in Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Brizendine v. Swenson, D.C., 302 F.Supp. 1011. In Pate, 1. c. 384, 86 S.Ct. 1. c. 841, it was found that "the record shows that counsel throughout the proceedings insisted that Robinson's present sanity was very much in issue," and the testimony was more than sufficient to make the issue a debatable subject. In the Brizendine case defense counsel challenged the competency of the defendant to proceed and requested a medical examination to substantiate that fact. After receipt of the report of the examination (which included the conclusion of the examining doctor that defendant was competent to proceed), the failure to have an evidentiary hearing and a court finding on the issue was found to be error. This ruling was based on two grounds. The first was failure of the trial court to comply with Section 552.020(6), V.A.M.S., which provided that after the report of examination is filed " * * * the court may make a determination and finding of record on the basis of the report filed or may hold a hearing on its own motion. If any such opinion is contested the court shall hold a hearing on the issue." As is obvious, the trial court can not be charged with error for non-compliance with a statutory procedure enacted in 1963, twenty years after trial. Second, in Brizendine, 302 F.Supp. 1. c. 1019, the court on the rationale found in Pate concluded: "If the trial court grants a motion * * * (for a psychiatric examination) * * * it is obvious that a *bona fide* doubt is immediately established as a matter of fact and as a matter of law in that particular case; otherwise the trial judge would not have granted

the motion." The question then arises as to what type of motion must be sustained by the trial court to require, as a matter of law, an evidentiary hearing on the issue prior to trial. As considered in the Brizendine opinion, and therein quoted, defense counsel specifically directed his motion toward the present competency of the accused when he alleged, 1. c. 1012, "he is unable to understand and comprehend that he is charged in this Court with first degree murder." Competency to stand trial was the issue created by the motion. One dispositive question remains—is the holding in Brizendine also applicable to a motion for examination to determine "sanity at time of the commission of the act" and which does not raise the issue of "competency to stand trial?" We have concluded that it is not and that the historical recognition of the distinction between that mental capacity, at the time of commission of the act, required to hold one punishable for his crime, and that required to hold one incompetent to stand trial, still exists. This conclusion is further dictated by virtue of the fact that an issue of sanity at the time of commission of the act is initially not a question for the trial court but for the jury. As said in State v. Church, 199 Mo. 605, 98 S.W. 16, 20: " * * * if the accused is insane at the time of the commission of the offense with which he is charged, this is tried by the jury * * * and in this way his insanity, if proven, is available as a defense * * *." Of course, the issue may later be for the trial court on the question of submissibility. We, again, look at the thrust of the motion filed in the instant case. To paraphrase, it was an explanation by the public defender at arraignment that he represented an indigent defendant; that he contemplated a plea of not guilty because of insanity; that, absent assistance by the court, no funds were available to establish the proposed defense; and, that, because of the nature of the crime, he would like an examination by three doctors. Without questioning the authority of the court to do so, we are convinced the order as made was

solely for the purpose of aiding an indigent defendant and cooperating with the public defender in exploring a possible defense. The motion questioned movant's ability to appreciate the difference between "right and wrong"—which in 1943 was, generally, the question for determination by the trial jury. In searching the record, we find nothing indicating the purpose of the motion was otherwise, and competency to stand trial was not questioned nor for decision. For this reason, we do not believe the holding in either Pate or Brizendine to be controlling in this case. We, therefore, find that the claim of incompetent counsel can not be sustained absent any showing that he had any honest basis for asserting movant was incompetent to stand trial.

Other grounds for challenging competency of trial counsel include:

■ (a) There should have been an attack on the information because it said, " * * * one mortal wound * * * of the depth of five inches * * *," and the knife did not have a blade five inches long. Even if we would ignore that the flesh of such a small child might have given with the force of the blow, such a variance would not be fatal.

■ (b) More than one private psychiatrist should have been offered at trial. This suggestion ignores the fact that four examinations were had and further funds being available seems doubtful.

■ (c) There should have been a motion to suppress the knife (with human blood on it) because it was illegally obtained. To the contrary, the record reflects it was not obtained as the result of a search or seizure, and no further reason is given to substantiate the suggestion.

■ (d) There should have been an effort to suppress the confession as "defendant could have been overborne." Notes of the trial judge indicated, "Admission admitted, objection withdrawn." Apparently some effort to keep the confession from the jury was made, and the fact counsel was not successful is not evidence of an incompetent effort.

■ (e) There should have been a request for a change of venue because of newspaper publicity. Present counsel obviously expended much energy in obtaining photostatic copies of newspapers containing articles about the crime and later of the trial. During the time the latter were published, the jury could not have seen them, and we have read each article pertaining to the crime immediately after it occurred. There appears to be nothing unusual in the manner the articles were written, and the headlines during the time were dominated by war news covering an American Offensive in North Africa near the Tunis Plain.

■ (f) No voir dire inquiry was directed toward fact jurors might have read of crime in the newspapers. The trial judge had "no recollection" on this specific point, but his trial notes indicate there were challenges for cause which may or may not have included this reason.

■ (g) Testimony was allowed that defendant had molested other girls. This assertion is based on one sentence in the trial judge's notes. In connection with the testimony of a police officer, the judge had written, "Jimmy had molested other girls." Whether this was a direct quote of the witness or a conclusion of the court is not clear. In any event, under the facts of this case, if it be assumed no objection was made, reversible error would not necessarily follow, because the record shows commission of the act was undenied and the sole defense was insanity at the time of its commission. It would be debatable whether this improper evidence aided or hindered the effort to establish the defense offered.

The alleged errors of counsel, as listed, do not establish ineffective assistance of counsel.

Next, it is contended that the trial judge abused his discretion by overruling the motion for new trial and reducing the penalty to life imprisonment. As we said in State v. Keeble, supra, 427 S.W.2d at 406: "A motion under Rule 27.-26 does not operate as a second appeal (nor as an original appeal if no direct appeal was taken from the original conviction)." Nor can it be invoked to review whether the evidence supports the charge. State v. Wiggins, Mo., 360 S.W.2d 716; State v. Benison, Mo., 415 S.W.2d 773. However, the argument is presented reference a rather unique set of circumstances and should be discussed. Although the trial judge testified in this proceeding, his trial notes are also in evidence. It appears that after the original trial he summarized in writing his impressions of not only the conduct of the trial but also his thoughts in connection with the jury verdict and assessment of the death penalty. This appears to have been done in "explanation of my reason for commuting the sentence from death to life." Further observations included: "Inasmuch as there is some doubt about the ability of the defendant to deliberate and premeditate this crime within the meaning of the law, the Court feels that sentence should be commuted to life imprisonment. * * * The court, since the very day this punishment was assessed by the Jury, has felt that the punishment was an improper one in view of the evidence in the case." At the hearing, the testimony was: "Put it this way. If I would have been in that jury box I would have found him insane within the meaning of the law at the time of the commission of the offense."

A record of the thoughts of a trial judge is seldom so available. However, we note, as we must, that the motion for new trial was overruled. If the court had had any reasonable doubt as to whether the movant had been given a fair trial, he would have been duty bound to grant a new trial. Since he did not, it was apparently his legal conclusion that the trial, as had, was proper. When the recorded thoughts and denial of the motion for new trial are considered together, it is to the credit of the trial judge that he fully appreciated that the issue in question was for the jury and not the court.

We have considered numerous other suggestions of counsel, but need not further extend this opinion by covering each in detail as none of them call for vacating the sentence and judgment originally entered.

The findings of fact and conclusions of law entered in the instant proceeding are consistent with this opinion and we do not find them to be erroneous. State v. Mountjoy, Mo., 420 S.W.2d 316; Crosswhite v. State, Mo., 426 S.W.2d 67.

Present counsel is to be commended for the exhaustive effort made as appointed counsel in reconstructing the record of the original trial.

The judgment is affirmed.

All of the Judges concur.