Austin V. JOHNSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 56421.

Supreme Court of Missouri,
Division No. 2.

April 10, 1972.

Motion for Rehearing or to Transfer to Court
en Banc Denied May 8, 1972.

Paul Brackman, Clayton, for appellant.

John C. Danforth, Atty. Gen., Stephen D. Hoyne, Asst. Atty. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Austin V. Johnson has appealed from the order of the Circuit Court of St. Louis County denying his three separate motions, consolidated for hearing, pursuant to Supreme Court Rule 27.26, V.A.M.R., to withdraw his plea of guilty entered on December 8, 1961, in each case to first degree murder, and to set aside the judgment and concurrent sentence in each case of life imprisonment.

Appellant was charged by indictment with the murder of his wife, Elizabeth Johnson, by stabbing her with a butcher knife. He was charged by information in two other cases with the murder of his father-in-law, Albert E. Bruce, and his mother-in-law, Beatrice Bruce, by shooting them with a shotgun. The three murders occurred within one half hour, but at two different locations.

Appellant testified in the hearing on his motions that immediately prior to September 15, 1961, he and his wife had been living in Webster Groves, Missouri. There had been some previous marital difficulties, but in August appellant had gone to Minnesota on vacation and his wife was to join him later. When he called her and she told him she was not going to Minnesota, he returned home and found that his wife had moved out of his house and had rented another house, and her parents were living with her. This situation caused appellant to have a nervous condition, and he consulted a doctor who prescribed two drugs, one called "Doriden" and the other "Dornwal," identified by the prescribing doctor as a sleeping pill and a "mild tranquilizer." According to appellant, on September 15, 1961, he left his employment at noon with the intention of driving to Southeast Missouri to see his mother. He stopped at a service station, purchased a soft drink and mistakenly took one of the Doriden pills when he intended to take a Dornwal pill. When he discovered his mistake he took the Dornwal pill and drank the soft drink. He testified that after he left the service station he had no recollection of anything that occurred until he was driving on Highway 61 near Ste. Genevieve when he heard his name mentioned on the radio of his automobile. He drove on to his mother's place, and later when he saw a Highway Patrol automobile approach he ran away and walked to the home of an aunt who persuaded him to call the authorities.

The murder of appellant's wife occurred at her place of employment at approximately 1:30 o'clock in the afternoon of September 15. There were at least three eyewitnesses. Mr. and Mrs. Bruce were

murdered approximately twenty-five minutes later at their home. The only eyewitness to these murders was appellant's 3½-year-old daughter, but there was other evidence, circumstantial in nature, which implicated appellant.

In his motions pursuant to Rule 27.26, V.A.M.R., appellant presented twelve grounds on which he sought to set aside his pleas of guilty. After a hearing was had on that motion and the trial court entered its findings, appellant sought to amend his motion, and after being permitted to do so, a second hearing was held on the amendment before a different judge. We shall refer to the two motions and hearings as though there was but one.

In his brief appellant has reclassified some or all of his alleged grounds for relief into three points with subpoints under each.

Appellant first contends the trial court erred in overruling his motions as to each of the pleas of guilty because the court accepted his pleas of guilty without first determining whether the pleas were entered voluntarily and with an understanding of the nature of the charges and the possible penalties therefor. He asserts in the subpoints that this failure on the part of the court is evidenced by the following: (a) the court failed to advise appellant that a plea of guilty constituted a confession in open court and constituted a waiver of his constitutional right against self-incrimination; (b) it did not make inquiry with respect to whether appellant had been subject to coercion, threats, promises, agreement or other inducement which might have borne on his decision to plead guilty; (c) it failed to make inquiry as to whether appellant actually committed the offenses charged; (d) it did not inquire whether appellant understood he was entitled to a jury trial; (e) it did not advise appellant of his right to confront his accusers and to remain silent; and (f) it did not advise appellant he could receive a death sentence for each offense to which he entered a plea of guilty.

The transcript of the proceedings at the time the pleas of guilty were entered shows that appellant appeared before the court with his retained counsel, a lawyer experienced in criminal trials. Appellant personally anounced that he desired to change his plea of not guilty to guilty in the case in which he was charged with the murder of his wife. The court inquired of appellant whether he had had sufficient time to discuss his plea with his attorney and with a friend or relative, and appellant replied that he had and that he had reached his decision to enter pleas of guilty after those consultations. The court then asked appellant's counsel if he concurred in appellant's decision, and he replied that he did. The court then followed substantially the same procedure as to the other two charges of murder against appellant. Following this, the court asked for the facts of the offenses and they were related by the prosecuting attorney. In doing so he stated that appellant had murdered his wife with a knife and had shot and killed his father-in-law and his mother-in-law. During this explanation, appellant made no correction of the facts as related by the prosecuting attorney, and although his mother, stepfather, and the pastor of his mother's church were in the courtroom, no objection or correcting comment was made. At allocution appellant personally stated he had no legal reason why sentence and judgment should not be pronounced in each case.

▮ The transcript discloses that the investigation made by the trial court before accepting the pleas of guilty was not as broad and inclusive as contemplated by Rule 25.04, V.A.M.R. But, after sentence the trial court may set aside the judgment of conviction and permit the withdrawal of a plea of guilty only "to correct manifest injustice." Rule 27.25, V.A.M.R. When seeking to withdraw a plea of guilty after sentence, the defendant has the burden to prove by a preponderance of the evidence the facts alleged in his motion which demonstrate that manifest injustice resulted

from the acceptance of his plea of guilty. "The issues before the trial court at the hearing on the motion, notwithstanding the failure of the record to show a determination prior to the acceptance of the plea as contemplated by Rule 25.04, are whether defendant's plea of guilty was in fact voluntarily made or whether it was made without an understanding of the nature of the charge. If neither of these circumstances is found to have existed no manifest injustice could have resulted from the acceptance of the plea." State v. Mountjoy, Mo., 420 S.W.2d 316, 323.

In addition to the testimony previously set out, appellant testified that he saw and consulted with his attorney six or seven times over a period of four months, that he told him about taking the pills at the service station and about his lack of memory as to any occurrence until he heard his name on the radio. He further stated that his counsel did not discuss with him the evidence against him, or that the only eyewitness to the murders of his wife's parents was his 3½-year-old daughter. He further stated that his counsel never discussed with him the possibility of a defense based on involuntary intoxication by use of drugs, but that he did tell him that if he went to trial there was a good possibility that he would receive the death penalty on at least one of the cases, but that the prosecuting attorney would recommend a life sentence on each if he entered a plea of guilty to all the charges. Appellant also testified that if he had been asked at the time of his plea of guilty if he had killed his wife or his father-in-law or mother-in-law, his answer would have been that he did not know whether he did or not.

Appellant's counsel was called by the State as a witness. He testified that he first saw and consulted with appellant about a week after the murders were committed, and that although appellant told him that he was taking medicine, he did not say anything about taking the medicine improperly. He also testified that appellant told him that after he left the service station he went

to the office where his wife worked, and that appellant described to him the murders of his wife's parents, and gave various details such as the location of the bodies and which one died first. Appellant's counsel further testified that he told him that the State had evidence that he had purchased a butcher knife shortly before the murder of his wife, and when he asked appellant if he had done so appellant "smiled and nodded yes." His counsel also testified that he was aware of and discussed with appellant the State's evidence against him, and that he also discussed with him the evidence that appellant could present; that he told him there could be three separate trials and that the death penalty was possible; and if he was tried separately the sentences could be made to run consecutively, but that the prosecuting attorney had agreed to recommend three life sentences to run concurrently in the event appellant entered a plea of guilty to all three charges. Appellant's counsel also testified that he told him that it would have to be his decision whether to plead guilty to all charges or go to trial, and that this was discussed between them for three or four weeks. During the investigation of the cases, counsel made a trip to Southeast Missouri to appellant's mother, and he arranged to have appellant examined by two psychiatrists. Their written report is in the record, but we do not need detail their findings except to say they concluded that appellant was not mentally incompetent.

The trial court found that appellant intelligently, knowingly and voluntarily entered a plea of guilty to each charge of murder and that the pleas were not coerced or improperly induced.

Appellant has set forth in his brief, as previously set out, six factual matters as to which he asserts the trial court did not advise him or make suitable inquiry. There is no precise procedure or outline which must be followed by a trial court in determining that a guilty plea is voluntarily and understandingly made. We can assume that the trial court in this case

made such a determination, but as previously noted the record made at the time does not reveal an inquiry as inclusive as contemplated by the applicable rule. However, the record made at the hearing on the motion does authorize a finding that the pleas were voluntarily and understandingly made. The trial court has the right to reject testimony on behalf of the prisoner who has filed a motion pursuant to Rule 27.26, V.A.M.R., even though there is no contrary evidence, Shoemake v. State, Mo., 462 S.W.2d 772, 775, particularly when the testimony came from him, who of course has an obvious personal interest in the outcome. The testimony of appellant's counsel shows that he advised appellant fully concerning his pleas, the effect and result of them, and the matters to be considered by appellant in arriving at his decision whether to enter pleas of guilty. If appellant in fact knows the result of a guilty plea it is immaterial whether he came by that knowledge as the result of being told by his counsel or by the court.

The various subpoints listed by appellant are matters which may or may not be helpful, depending on the factual circumstances of each case, to the trial court in determining whether a plea of guilty is made voluntarily and with an understanding of the nature of the charge. But, to say that the matter referred to in each subpoint must be related to appellant or inquired into regardless of the circumstances places form above substance. While it has been stated that a court must determine whether a plea of guilty is voluntarily made with an understanding of the nature of the charge, even though the accused is represented by counsel of his choice, Drew v. State, Mo., 436 S.W.2d 727, the fact that the accused is represented by counsel who has had extensive practice and experience in criminal trials is a matter that may be considered by the court in making its determination. Each of the six matters mentioned in the subpoints is directly or inferentially refuted, or other evidence shows that appellant had knowledge of the matter mentioned. We

conclude that there is adequate evidentiary basis for the finding of the trial court that appellant entered his pleas of guilty voluntarily and with an understanding of the nature of the charge against him, and that the finding is not clearly erroneous.

Appellant next contends that his employed counsel was "ineffective" because (a) he failed to investigate and pursue the defense of involuntary intoxication by reason of drugs; (b) he failed to advise appellant of his defenses to the charges of murder of his wife's parents and improperly advised him to plead guilty; and (c) he failed to advise appellant of the numerous procedural errors being committed by the prosecution.

This contention demonstrates the too prevalent idea that counsel is "ineffective" in the constitutional sense unless he obtains an acquittal, and that hindsight should be the standard to determine the competency of counsel. In the preparation of a case a lawyer is not required to be clairvoyant, and he must of necessity rely on information furnished him by his client.

As to (a): In this case, appellant's counsel was experienced in the trial of criminal cases. He testified that appellant told him that he had been taking medication in the form of pills, but appellant did not tell him that he even thought the medication caused any adverse condition or that he had taken the pills improperly. Counsel did arrange for an examination by two psychiatrists. Assuming that by hindsight one may now come to the conclusion that something further should have been done, but we do not so hold, this circumstance would not demonstrate ineffectiveness of counsel in the constitutional sense. See the discussions pertaining to this in McQueen v. State, Mo., 475 S.W.2d 111.

As to (b): In making this contention two things are overlooked. First, appellant's counsel testified that he was familiar with the strength of the State's case as to all three charges, and that he discussed this with appellant. Appellant's counsel was

aware that the only eyewitness to the murder of the parents of appellant's wife was the 3½-year-old daughter. However, the fact that counsel concurred in the pleas of guilty and that these two charges of murder, to some extent, had to be established by circumstantial evidence does not demonstrate ineffectiveness of counsel in the constitutional sense. Second, the arrangement for the prosecuting attorney to recommend concurrent life sentences as to each charge of murder was on the basis that a plea of guilty would be entered in each case, and appellant testified that he so understood. This was a part of the strategy in the "plea bargaining," a process expressly approved in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed. 2d 427. We decline to second guess appellant and his counsel as to this strategy.

■ As to (c): Appellant's argument is that his counsel failed to advise him, a layman, of procedural errors. This contention would result in the peculiar situation where trained counsel is required because a lay defendant is deemed not capable of representing himself, but as to these technical matters the trained legal counsel would not be permitted to exercise his professional judgment, but must relate them to the untrained lay defendant for the exercise of his uninformed judgment. Appellant argues that his counsel "failed to discuss" with him the various matters that the trial court did not inquire about at the time of his pleas, that is, his right to trial by jury and right against self-incrimination; his right to confront the witness against him and to remain silent; and that a plea of guilty would constitute a confession in open court. We cannot agree that the record shows that these matters were ignored. It may be that counsel did not recite to appellant each matter as though using a previously prepared outline, but he did discuss in detail with appellant the State's evidence, his possible defenses, and whether he should stand trial or enter pleas of guilty. We conclude that appellant's contention of ineffective counsel is totally without merit.

Appellant's third and last point is that the trial court erred in overruling his motion to vacate as to each case "by failing to find that the following procedural deficiencies constitute a denial of movant's rights * * *." (a) The name of the only actual witness against him was not endorsed on the informations in which he was charged with the murder of his wife's parents. (b) The court at the time of the plea had no jurisdiction of the cause. (c) The indictment failed to follow the language of the statute. (d) The informations were not read to appellant by the court. (e) Appellant was never asked or allowed to waive the reading of the indictment charging the murder of his wife. (f) The court failed to grant appellant sufficient time to prepare a defense or to examine the informations before requiring him to enter a plea. (g) The court erred in overruling appellant's objection to the "competency of [appellant's counsel] as a witness" and in permitting the introduction in evidence of Exhibit D, the report of the psychiatrist. (h) The court erred in failing to find that the absence of a transcript of the preliminary hearing constitutes a failure to comply with the requirements of § 544.370, RSMo 1969, V.A.M.S., and Rule 23.12, V.A.M.R.

These contentions are without merit.

■ (a) Both appellant and his counsel knew that the daughter was a potential witness, and her name could have been endorsed on the informations if she was called as a witness in the event of trial.

(b) This contention is based on appellant's testimony that he entered pleas of guilty before the informations were filed. However, the record and the testimony of the trial judge who accepted the pleas authorize a finding to the contrary, and the trial court before whom the evidentiary hearing was held found otherwise.

(c) Appellant argues that the word "penetrate" did not appear in the indictment charging appellant with the murder

of his wife by use of a knife. This contention is ruled by Morgan v. State, Mo., 472 S.W.2d 373.

(d) The reading of the informations was expressly waived by appellant in open court.

(e) The record does not affirmatively show a reading of the indictment or a waiver of the reading thereof at the time the plea of guilty was entered. However, the record shows that appellant was arraigned approximately four months earlier and a plea of not guilty was entered. There is no contention that the arraignment was not proper.

■ (f) After the reading of the informations charging appellant with the murder of his wife's parents was waived, the court asked: "Have you had sufficient time to discuss this matter with your lawyer?" and appellant replied, "Yes, Your Honor."

■ (g) When appellant voluntarily testified concerning his conversations with his counsel, he waived the attorney-client privilege, at least to everything to which his counsel testified.

(h) The preliminary hearing as to each charge of murder of a parent of appellant's wife was expressly waived.

The findings of fact of the trial court are not clearly erroneous, and its conclusions of law were correct.

The judgment is affirmed.

HOUSER, C., concurs.

PER CURIAM.

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the Court.

MORGAN, P. J., HENLEY and DONNELLY, JJ., and SMITH, Special Judge, concur.