John Henry PARKS, Appellant,

v.

STATE of Missouri, Respondent.

No. KCD 26730.

Missouri Court of Appeals,
Kansas City District.

Dec. 30, 1974.

Willard B. Bunch, Robert A. Simons, Paul T. Miller, Scott A. DiSalvo, Kansas City, for appellant.

John C. Danforth, G. Michael O'Neal, Neal MacFarlane, Jefferson City, for respondent.

Before DIXON, C. J., and SHANGLER and WASSERSTROM, JJ.

DIXON, Chief Judge.

On October 15, 1963, appellant entered a plea of guilty to the charge of Murder, First Degree. He thereafter filed a motion pursuant to Rule 27.26, V.A.M.R., which was denied in Division 10, Circuit Court of Jackson County; and he appealed to the Missouri Supreme Court. The Supreme Court transferred the cause to this court for lack of jurisdiction. Parks v. State, 492 S.W.2d 746 (Mo. banc 1973).

Appellant was arrested and charged with the first degree murder of his wife. On August 1, 1963, a preliminary hearing was held wherein appellant was represented by counsel and the testimony of four witnesses was transcribed. The first of those witnesses was a deputy coroner for Jackson County. Mr. Magady had responded to the scene of the shooting and viewed the deceased. He then identified a certain death certificate as being that of the victim, appellant's wife. Roena Johnson, the landlady of Mrs. Parks, stated that on the day of the shooting, she was in the kitchen and overheard Mrs. Parks requesting appellant to leave. This prompted her to phone the police and proceed to the front porch. There she saw the victim seated, with her two-year-old girl in her lap, and the appellant standing by the bannister. Mrs. Parks cautioned the appellant about "waving that gun around" and he responded that he was not going to shoot her. Mrs. Johnson returned to the kitchen where she heard two shots, but did not venture outside until the police arrived. She further testified that appellant had been on the premises the day before, with a gun in his possession; Mrs. Parks had asked her to call the police one month before because of appellant's presence with gun in hand. An officer testified that having responded to the call from the landlady, he found Mrs. Parks suffering from three bullet wounds and apparently dead. He issued a "pickup" for appellant. A detective interrogated the appellant following the arrest. Appellant related to the detective that he and his wife were separated and had encountered much difficulty in their relationship; that he had taken a gun with him both on the day of the fatal incident and the night before; that another man had come between him and his wife; and that on July 7, 1963, he shot his spouse at least three times.

Appellant was arraigned on August 5, 1963 and entered a plea of not guilty. He was not at that time represented by counsel, but the trial court specifically found he was mentally able and sufficiently informed to waive his right to counsel based on the court's interrogation of the defendant.

On October 15, 1963, appellant personally appeared in court, withdrew his plea of not guilty, and entered a plea of guilty. He was at that time represented by the same lawyer as had represented him at the preliminary hearing. In response to questioning by his counsel, appellant indicated that he understood his right to jury trial, the range of punishment, and what his "chances" were. The State briefly outlined the facts, whereupon the following took place:

"THE COURT: Did you kill your wife, as Mr. Oberlander stated?

THE DEFENDANT: Yes, I killed her, I guess, not on account and purpose. I didn't do it intentionally.

THE COURT: Well, what did you do? Tell me what you did.

THE DEFENDANT: I wanted to talk to my wife about going back together; and we had been separated merely—I couldn't get a job sufficient to take care of her and the kid. We had separated so she could draw welfare. And during the time I was doing part time. I was giving her $20.00 a week, plus extra when I had it. She started fooling around with another man, and I went to talk to her about it. Well, she claimed it wasn't true, but I had seen with my own eyes. I think she became more afraid of me than anything else, and that is why she started having me put in jail.

\*　　\*　　\*　　\*　　\*　　\*

MR. OBERLANDER: Did you take a gun with you on this occasion, and did you shoot her in the head?

THE DEFENDANT: I had this gun in my possession, but I don't know where I shot her. After I give myself up, turned myself—

MR. GEPFORD: You did shoot her though, did you not?

THE DEFENDANT: Yes, sir.

MR. GEPFORD: And was it your gun you shot her with?

THE DEFENDANT: Oh, yes.

MR. GEPFORD: And you are entering a plea of guilty at this time, is that correct?

THE DEFENDANT: Yes, sir."

The court then accepted the plea of guilty and the recommendation of life imprisonment.

This 27.26 motion was filed November 4, 1970, and a hearing was held on February 26, 1971. Appellant was the only witness called at the hearing. His trial counsel, Richard B. Kirwan, an able, experienced trial lawyer was deceased at the time of the hearing. Appellant expressed a lack of memory regarding such things as the act itself, the arrest, the preliminary hearing, and the plea proceedings. However, his memory was not so clouded concerning other aspects of the case. Appellant stated that he asked Mr. Kirwan to obtain a psychiatric examination, but that Mr. Kirwan told him the cost was prohibitive. He further testified that his attorney did not explain the nature of the charge of first degree murder, or other degrees of homicide; but he did understand that he was being charged with a murder. He then stated that he entered a plea of guilty in order to escape the gas chamber. The appellant asserted that he saw Mr. Kirwan only once specifying that this was on the day he pleaded guilty. The record itself belies this assertion since Mr. Kirwan appeared on his behalf at the preliminary hearing. On cross-examination, the prosecutor explored appellant's lack of memory regarding the time period during which the crime and attendant proceeding took place. Again, appellant's position was that, "I just don't remember anything that happened." He reasserted his opinion that he was suffering from a mental defect at the time of the crime, and continued:

"I told Mr. Kirwan that I didn't think I had committed the crime because I loved my wife and I don't think I would do anything to hurt her like that."

On appeal, appellant relies on the same points asserted in his 27.26 motion, viz:

I.  The absence of counsel at arraignment prejudiced appellant to the extent that he sacrificed the defense of insanity.

II. Appellant was denied the effective assistance of counsel through counsel's failure to move for a mental examination.

III. Appellant's plea was not entered voluntarily and with an understanding of the nature of the charge.

I

■ Appellant was not represented by counsel at his arraignment on August 5, 1963. Under Missouri law, arraignment is not a critical stage in a criminal proceeding. McClain v. Swenson, 435 F.2d 327, 330 (8th Cir. 1970); State v. Grimm, 461 S.W.2d 746, 753 (Mo.1971); State v. Donnell, 430 S.W.2d 297, 300 (Mo.1968). Absent some prejudice to the accused, the non-appearance of counsel at arraignment is not violative of due process. McClain v. Swenson; State v. Grimm; and State v. Donnell. Appellant asserts prejudice did, in fact, occur because of the requirements of Section 552.030, RSMo 1969, V.A.M.S., (relating to a plea of not guilty by reason of mental defect). Subsection 2 of that statute requires that a defendant announce his intention to rely on the defense of mental disease or defect at the time he enters his plea, or give written notice of such intention within ten days after entry of his plea. (The court may expand the ten-day limitation upon a showing of good cause.) Appellant argues that the absence of counsel at arraignment resulted in the unintentional waiver of his defense of insanity.

■ From the outset, appellant's contention meets with difficulty. The effective date of Section 552.030 was October 13, 1963, and appellant was arraigned on Au-gust 5, 1963. Thus, his argument calls into question the retroactive aspects of Section 552.030. However, it appears that a resolution of this question is not necessary for the disposition of this point. If Section 552.030 does not apply, no prejudice could have resulted because under the former statute "he could have asserted the defense of insanity under his plea of not guilty and would not have had to enter a special plea." State v. Donnell, 430 S.W.2d 297, 302 (Mo.1968). If, on the other hand, Section 552.030 does apply, the record does not indicate that appellant was prejudiced by lack of counsel at arraignment. A defendant is not absolutely required to raise the defense of insanity at arraignment. He may file written notice of his intention within ten days thereafter or at an even later date upon a showing of good cause. Aside from appellant's self-serving assertion that he told his deceased lawyer he wanted to see a doctor, there was no proof that the appellant ever exhibited any symptoms or requested any relief from anyone on the ground he was insane. He had been imprisoned for seven years at the time of the hearing and had never been examined for mental disease or defect; the other failure of any showing of prejudice is apparent in the ensuing discussion of appellant's next point.

II

Appellant next contends that he was denied the effective assistance of counsel through his attorney's failure to move for a mental examination.

■ Where a guilty plea has been entered, the determination of the adequacy of counsel is immaterial except to the extent that it bears on the issues of voluntariness and understanding. Barylski v. State, 473 S.W.2d 399, 402 (Mo.1971). Thus, the question is whether counsel's inaction prevented the appellant from making "a voluntary and intelligent choice among the alternative courses of action." North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct.

160, 164, 27 L.Ed.2d 162 (1970). Stated another way, and more specifically, did counsel's failure to move for a mental examination amount to an abdication of his legal duty such that the clarity of the alternatives open to appellant become so clouded as to compel the relief he seeks?

■■■ In challenging counsel's failure to move for an examination, appellant must show that there was some basis for asserting the defense of insanity. See Franklin v. State, 455 S.W.2d 479, 483, 485 (Mo.1970), where there was no basis requiring counsel to move for an evidentiary hearing on the question of competency to stand trial; Chapman v. State, 506 S.W.2d 393, 395 (Mo.1974) holding that in the absence of some warning sign or suggestion of mental aberration there is no absolute or routine duty on counsel to initiate an independent investigation of the mental condition of the accused; and Brown v. State, 485 S.W.2d 424, 428 (Mo.1972), approving of counsel's judgment in not requesting a mental examination where there was no honest basis for asserting the appellant's unfitness to proceed. Here, there also appears to be no support for the defense of insanity. Appellant's brief contends that the act charged is not one which a sane man would commit, and therefore, trial counsel should have been on notice that mental problems were involved. Adoption of the view that no sane person would commit a murder would require an examination of every such defendant and, if carried to its logical extreme, deny the right to convict any such defendant. The only other evidence of insanity is the testimony of appellant to the effect that he could not recall the details of the act, and that he told Mr. Kirwan that he "wanted to see a doctor." On the other hand, the record indicates that appellant has had no mental problems either before or since the murder of his wife. On balance, there appears to be no real basis for an assertion of the defense of mental defect, and the point is without merit.

## III

Appellant's third point, that his plea was not entered voluntarily and with an understanding of the nature of the charge, presents more difficult questions.

Specifically, his argument is that the following exchange, which occurred at the plea proceedings, amounted to an equivocal plea:

"THE COURT: Did you kill your wife, as Mr. Oberlander stated?

THE DEFENDANT: Yes, I killed her, I guess, not on account and purpose. I didn't do it intentionally."

Appellant contends that this language negated the element of intent, essential to a conviction for first degree murder. Further, that the trial court did not seek to establish the precise intent with which the act was committed.

The argument of the appellant is based solely on the basis of what is shown by the transcript of the plea proceedings, and the State argues in its brief based on the authority of State v. Grimm, 461 S.W.2d 746 (Mo.1971) that in proceedings under Rule 25.04 for the withdrawal of a plea of guilty or the vacation of a conviction based upon a plea of guilty, the inadequacy of the record of proceedings at the time of the entry of the plea is not the only criteria for determining the right of the appellant to such relief. Grimm does, in fact, hold that the inadequacy of the transcript of the plea proceedings does not in and of itself require upon application of the appellant . . . that the plea of guilty be set aside. Thus, the precise question for determination is whether upon the entire record the appellant's plea of guilty was, in fact, voluntarily made and with understanding of the nature of the charge.

■■ In the circumstances of this case, certain factors not ordinarily present become important. The fact that there has

been a very substantial delay in the filing of the motion from the time of entry of the plea becomes a factor, both as to credibility and as to the review of the record itself, and this is particularly true when the delay is accompanied as in the instant case by the death of witnesses who could have otherwise testified to the factual circumstances surrounding the plea. Skaggs v. State, 476 S.W.2d 524 (Mo.1972). Shoemake v. State, 462 S.W.2d 772 (Mo. banc 1971); Flood v. State, 476 S.W.2d 529 (Mo.1972); and Rhoades v. State, 504 S. W.2d 291 (Mo.App.1973). Likewise, the competence of counsel present at the plea proceedings is a factor to be considered. State v. Holland, 411 S.W.2d 181 (Mo. 1967). It is noted that counsel in the instant case, Richard B. Kirwan, was characterized by the trial court in *Holland* as "a competent and conscientious lawyer of vast experience." It is also true that the burden of proof is on the appellant, Rule 27.-26(f), and also that in a post-conviction proceeding such as this, the court may take judicial notice of its own files and records. State v. Keeble, 399 S.W.2d 118, 122 (Mo. 1966); State v. King, 380 S.W.2d 370, 373 (Mo.1964). So considered, the entire record here shows that the appellant had been present at the house of the victim the day before with a weapon, that he and the victim were involved in a matrimonial difficulty, including the appellant's belief that his wife was involved with another man and the continued quarreling in the presence of other witnesses. Likewise, the record indisputedly shows that the appellant shot the victim, his wife, three times, which is hardly consistent with his claim of accident or lack of intention and the admissions of the appellant that he was going to have it out with her that evening likewise appear. This statement of facts completely borne out by the record and consistent with the findings of the trial court is such that it brings this case within the ruling of Rayford v. State, 504 S.W.2d 285 (Mo.App.1973), in which the appellant, at the time of his plea, stated to the court facts which indicated he had a possible theory of self-defense, and the contention was made that this showing vitiated the voluntary nature of his plea. The court pointed out that to assess that situation, it was necessary to consider the evidence as to what was reasonably in the appellant's mind as to the probable success of that defense in view of the strength of the State's case, and then upon a review of the facts disclosed at the preliminary hearing concluding that the State's case at the preliminary would have supported a finding of first degree murder. The court concluded that the appellant had, in fact, made a reasoned choice and that the issue of his state of mind was a fact to be determined by the trier of facts upon the motion, concluding what the reasonable inferences were from the surrounding facts and circumstances. So viewed, the evidence in this case convinces that at the time of the entry of this plea when the appellant was confronted with the choice of a jury trial upon a first degree murder charge involving the unprovoked shooting of his wife while she held an infant child in her arms or the plea which resulted in a lesser sentence of life imprisonment, the appellant chose to enter a plea of guilty, and he may not now disavow that choice. This is particularly true where the only evidence supporting any other view of the record comes from the mouth of the appellant who knows that the witnesses who could have testified contrarily are not available.

The judgment and findings of the trial court are not clearly erroneous, and the judgment is affirmed.

SHANGLER and WASSERSTROM, JJ., concur.

TURNAGE, J., not participating because not a member of court at the time the cause was submitted.