**Robert Lee CAMPBELL, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 36661.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Dec. 16, 1975.

Rehearing Denied Jan. 23, 1976.

Sherwood Volkman, St. Louis, for appellant.

John C. Danforth, Atty. Gen., K. Preston Dean, II, Asst. Atty. Gen., Jefferson City, for respondent.

NORWIN D. HOUSER, Special Judge.

Appeal from a judgment overruling a motion filed by Robert Lee Campbell under

Rule 27.26 to set aside and vacate a judgment of conviction of murder in the second degree and a 25-year sentence.

The essential facts surrounding the killing are stated in the opinion on the original appeal, *State v. Campbell,* 465 S.W.2d 474, 475 (Mo.1971), and need not be restated.

On this appeal Campbell claims he was denied effective assistance of counsel at his original trial because of counsel's failure to interview or take the depositions of any of the nine witnesses endorsed by the State and because counsel failed to allow himself enough time for reflection and preparation for trial.

Appellant argues that if counsel had taken the officers' depositions he would have learned of their claim that during the return trip from Chicago, where he was arrested, appellant made the following incriminating statement: that he had gone into the tavern, had been asked to leave, and was pushed out of the tavern by the person who was later shot; that upon appellant's return to the tavern the victim grabbed appellant around the neck "with a death grip" whereupon appellant pulled out a gun with his right hand, put it over his left shoulder and squeezed the trigger, and the victim fell on top of him; that upon learning of this alleged statement counsel could have obtained appellant's version of the circumstances and events leading up to the alleged statement to ascertain whether in fact it was made and if made whether it was voluntary or made under duress and whether a motion to suppress should have been filed (appellant having testified at the 27.26 hearing that the officers gave him a quantity of whiskey and beer and that he was drunk on the return trip from Chicago); that none of this was possible because counsel heard about the statement for the first time during the trial; that if counsel had elicited the existence and substance of this statement by deposition before trial he "could have urged that this was self-defense" and used it in cross-examination of

State witnesses to exploit the discrepancies between their testimony and appellant's statement as to what the victim did to appellant physically immediately before the shot was fired.

 Counsel's failure to depose the police officers is not to be condemned as a matter of law. As said in *McQueen v. State,* 475 S.W.2d 111, 112 (Mo. banc 1971), "[t]he mere fact that [the attorney] failed to interview all the witnesses or any of the witnesses on the indictment does not necessarily mean he was negligent in the preparation of the case." And as stated in *Johnson v. State,* 479 S.W.2d 416, 420 (Mo.1972): "[i]n the preparation of a case a lawyer is not required to be clairvoyant, and he must of necessity rely on information furnished him by his client." Counsel's first information that the State contended appellant made an incriminating statement came to him when the detective took the stand and so testified. At that time counsel asked appellant whether in fact he had made such a statement and appellant *denied making the statement.* Appellant reiterated at the 27.26 hearing that he made no statement to the officers. In advising appellant to take the stand and testify counsel doubtless intended to elicit from appellant his denial that he made the incriminating statement attributed to him by the officers, but due to appellant's intransigent refusal to take the stand, and his failure to disclose to his counsel that the officers plied him with liquor and induced intoxication (of which failure counsel gave testimony at the 27.26 hearing), counsel was deprived of any opportunity to contradict the officers' testimony that the incriminating remarks were made, or to contend that if made they were made while appellant was in a drunken condition and therefore were involuntary and unreliable. Having withheld vital information from counsel and having refused to take the stand on advice of counsel appellant is in no position to complain about counsel's failure to take the officers' depositions before trial. On the effect of assurances by a

defendant to his counsel prior to trial that he had made no incriminating statements see *Barker v. State,* 505 S.W.2d 448, 451[9, 10] (Mo.App.1974).

Deposing the officers was not necessary to enable counsel to "urge the jury" that this was a case of self-defense, as appellant suggests. Several witnesses testified that appellant brandished a pistol in the victim's face immediately prior to the time they testified the two fell to the floor and wrestled. Self-defense was relied on and submitted to the jury by Instruction No. 4.

■ On the alleged dereliction of counsel in connection with possible cross-examination of State witnesses, we have considered his cross-examination in detail and concluded that he did a creditable job of eliciting the facts pertaining to the physical contact between appellant and the victim immediately prior to the firing of the pistol.

■ Appellant makes much of the direct examination of appellant's counsel, a 90-year-old veteran of the courts, in which he testified that he had not interviewed "any of the State's witnesses." On further examination it developed that counsel misunderstood the question; that he understood "State's witnesses" to mean the officers of the law—the policemen and detectives certified by the State as witnesses. As to the other witnesses—those present at the tavern at the time of the killing—counsel testified he "lived right down there where the thing happened, just below [his] house", a half a block away; that he knew all the people involved in it; that some of them were renters of his; that he went to the tavern and talked to people—talked to "everybody that knew about it"; that appellant was not liked in that place and everybody was against him; that appellant "really tried" to find witnesses that would be helpful but could find only one witness favorable to appellant, one Charles Ulmer, who was called and testified for appellant. In this state of the record the circuit court's

finding that appellant's counsel did not fail to interview State witnesses is not clearly erroneous.

■ Appellant argues that if his counsel had taken the time to reflect he could and should have prepared appellant to take the stand and testify in his own defense but instead, without notice, warning or preparation, counsel abruptly ordered him to take the stand (which appellant refused to do). It would be better practice to have a definite understanding in advance with the defendant on the question whether he should take the stand to testify in his own behalf, and to advise him that a final evaluation would be made at the close of the State's case; to inform him of the nature and content of the questions to be asked and ascertain what his answers will be, if he takes the stand, but this too is a matter of judgment and tactics resting in the discretion of the trial lawyer; matters as to which the courts do not require perfection. Errors in strategy or judgment are not proof of ineffectiveness of counsel. *McCarthy v. State,* 502 S.W.2d 397, 405[14] (Mo. App.1973).

■ Appellant contends that a thorough investigation would have revealed the necessity of placing appellant on the stand to counteract the giving of the instruction on flight, by showing and arguing that he returned to Chicago the day after the killing because that was his home and not to flee from arrest. It does not lie in the mouth of appellant to complain about counsel's failure to put him on the stand to testify, in view of appellant's acknowledgment that his counsel ordered him to take the stand and that he declined to follow the advice of his retained counsel.

Our review of the 148-page transcript of the murder trial (which reveals a strong if not overwhelming case against appellant) satisfies us that appellant received a fair trial in his legal representation; that counsel's representation of appellant was adequate, and that the circuit court's determi-

nation that counsel's representation and assistance at the trial was not ineffective is not clearly erroneous.

■ Nor is there merit in appellant's argument that he received ineffective assistance of counsel because counsel failed to move for a mental examination of appellant. There was no apparent reason to do so. His mother, testifying on the 27.26 hearing, asked whether she observed whether her son was "functioning mentally correctly," answered, "I know he was all right. Wasn't nothing wrong with him." His counsel testified that he did not consider requesting a psychiatric examination of his client because "he didn't seem to be off his rocker to me. Seemed to have good sense." Counsel considered him competent to stand trial. Review of his testimony at the 27.26 hearing indicates his mental competence at that time. His answers were responsive to the questions, coherent and intelligent. A mental examination is not required unless there is evidence or there are circumstances raising a reasonable doubt about the defendant's mental competence. *McCarthy v. State*, supra, 502 S.W.2d l. c. 403. There is no such evidence and there are no such circumstances present in this case. "In challenging counsel's failure to move for an examination, appellant must show that there was some basis for asserting the defense of insanity." *Parks v. State*, 518 S.W.2d 181, 185 (Mo.App.1974). This he has failed to do. "In the absence of some warning sign or suggestion of mental aberration there is no absolute or routine duty on counsel to initiate an independent investigation of the mental condition of an accused." *Chapman v. State*, 506 S.W.2d 393, 395 (Mo.1974).

Judgment affirmed.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.