**STATE of Missouri, Respondent,**

v.

**Arnold Stephen BARBER, Appellant.**

**No. WD 74279.**

Missouri Court of Appeals,
Western District.

Nov. 13, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 2012.

Chris Koster, Attorney General, Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for Respondent.

James R. Hobbs and Nathan Owings, Kansas City, MO, for Appellant.

Before Division IV: JAMES EDWARD WELSH, Chief Judge, MARK D. PFEIFFER, Judge, and GARY E. RAVENS, Special Judge.

MARK D. PFEIFFER, Judge.

Arnold Stephen Barber ("Barber") appeals the judgment of the Circuit Court of Adair County, Missouri ("trial court"), finding him guilty, after a jury trial, of two counts of tampering with a witness in violation of section 575.270 RSMo 2000. We reverse the judgment and remand for a new trial.

**Factual and Procedural Background**

In 2007, R.C. ("Mother") and J.C. ("Stepfather") (or collectively, "the family") ran a family business in Kirksville, Missouri. In August of 2007, Mother and Stepfather learned from their fifteen-year-old son, Z.C. ("Minor"), that Minor claimed to have been sexually molested by a patron of the family business who had become a friend of the family. Mother and Stepfather contacted the police, told them of Minor's story, and the alleged perpetrator was arrested. Barber, another patron of the business and friend of the family, was also a longtime close friend of the alleged perpetrator. As a courtesy to Barber, Mother and Stepfather asked Barber to come to their business so that they could tell him, in person, about the molestation allegations.

Subsequently, Mother and Stepfather hired attorney Seth Shumaker to represent their and their son's interests in any possible civil action arising out of the molestation allegations. Shumaker agreed to work with another local attorney, Brent Mayberry, on the family's possible civil claim.

On January 16, 2008, Mayberry contacted the alleged perpetrator's criminal defense attorney and asked him whether his client "would be open to paying some money to settle the civil case and make this all go away." Mayberry asked the alleged perpetrator's criminal defense attorney to make an offer on his client's behalf. The criminal defense attorney responded that he "didn't have any authority" and further stated:

> It's not the way you do things. Normally if somebody is going to file a lawsuit, they tell you how much they want rather than say how much will you give me. So it was a little different in that regard. But he indicated that in response to a query from me I said, "What's your demand? How much do you want?" He didn't want to tell me. Finally I said, "Well, give me a ballpark number of what you're talking about."
> He said, "Well, if [the alleged perpetrator] thinks this is going to go away for less than $150,000, he's mistaken."

The next day, Mayberry called the alleged perpetrator's attorney again and mentioned the $150,000 figure. The defense attorney passed the "offer" on to his client, who was accompanied by Barber

when he visited the defense attorney's office.

Sometime in February of 2008, Barber called the office of the family's other attorney, Shumaker, and made an appointment for February 21. Unbeknownst to Barber, Shumaker made audio and video recordings of the meeting.[1] Barber told Shumaker that he had come up with $150,000. Barber stated to Shumaker, "[A]s you may or may not know, [the alleged perpetrator's] a pretty good friend of mine."

After discussing how difficult it had been for Barber to raise the money, he asked Shumaker to "just pass that along for me."

Shumaker said, "Well, I, I, I think I will. I think I have to because I guess it's an offer. I guess it, I'm, I'm still a little confused if it's for the civil end of this thing or just not to be cooperative with the prosecutor."

Barber answered, "Well I guess just to, just to clear the situation in whatever way that it could be done above board and legally." Then the transcript of the conversation says "inaudible."

After Barber left Shumaker's office, Shumaker contacted the highway patrol and gave them the recordings that he had made of the conversation he had had with Barber. On February 29, Shumaker, accompanied by highway patrol officer Steve Wilhoit, attempted to call Barber seven times. When Barber returned Shumaker's call, Shumaker told Barber that he had passed their conversation on to Stepfather and that the family was "intrigued." Shumaker then asked Barber "what assurances is everybody going to want if this would happen?"

Barber responded, "Oh, just the normal ones and not being in the [law] business,

I'd have to have somebody kind of look at that."

Officer Wilhoit contacted Barber at his business. Wilhoit told Barber that he was investigating an allegation that Barber offered a substantial amount of money to the victim in a sexual molestation case. Wilhoit told Barber that Shumaker had recorded their conversation. According to Wilhoit, Barber's demeanor became "very much more guarded."

On June 23, 2009, the State obtained an indictment charging Barber with two counts of the Class C felony of tampering with a witness—one count corresponding to Mother and one for Stepfather. The State filed an amended information on June 1, 2011.

Trial began on June 1, 2011. Both Shumaker and Wilhoit testified for the State, Shumaker testifying as to what he thought Barber's intentions were when Barber made the appointment to meet with Shumaker at his office and then later met with Shumaker. Shumaker testified about what he thought different parts of the videotaped conversation meant.

Barber testified in his own defense, and the alleged perpetrator's criminal defense attorney also testified in Barber's case in chief. The jury returned guilty verdicts for Barber on both counts and this appeal follows.

## Legal Analysis

Barber's appeal alleges seven points of error, including that the evidence was insufficient to support his convictions, and that the trial court should have excluded Shumaker's testimony and the recorded conversations between Barber and Shumaker because Barber went to Shumaker

---

1. In the course of reviewing the record on appeal, we have reviewed the video recording, which includes audio, as well as the transcript of the recorded conversation.

seeking legal advice on how to structure a settlement with the family. Barber alleged at trial, and alleges here, that because he went to Shumaker to seek legal advice, an attorney-client relationship was established and, therefore, that their conversation was privileged.

Barber requested a copy of the trial transcript to submit to this court on appeal. However, the entirety of Barber's direct testimony and much of his cross-examination were not transcribed. Somehow the machine that recorded the trial for transcription was not turned on during most of Barber's testimony. Barber's seventh point on appeal is that the lack of a transcript of his testimony prevents meaningful appellate review of his convictions, denying him due process of law. We agree and remand for a new trial.

■ "An appealing party is entitled to a full and complete transcript for the appellate court's review. However, a record that is incomplete or inaccurate does not automatically warrant a reversal of the appellant's conviction." *State v. Middleton*, 995 S.W.2d 443, 466 (Mo. banc 1999). Barber is entitled to relief on this basis "only if he exercised due diligence to correct the deficiency in the record *and* he was prejudiced by the incompleteness of the record." *See id.*

### Due Diligence

Rule 30.04(h) allows the parties to correct an omission to the record by stipulation. Through no fault of his own, Barber's entire direct examination and much of his cross-examination were not transcribed. There is no stipulation as to what the missing portion of the transcript may have said. Although Barber submitted an affidavit as to what he believed his testimony to have been, the State did not stipulate as to the accuracy of Barber's affidavit. Also, Barber has suffered several

strokes since his conversation with Shumaker that gave rise to the charges against him. Barber's affidavit states that the strokes have affected his memory, including his memory of his trial testimony. In any event, the State does not challenge Barber's due diligence, instead claiming that Barber suffers no prejudice from the lack of transcript in this case.

### Prejudice

■ Barber must next show that he is prejudiced on appeal by the lack of a trial transcript. When there is no transcript of the trial at all, prejudice is assumed. *See Dykes v. McNeill*, 735 S.W.2d 213, 213–14 (Mo.App. S.D.1987). *See also State v. Cooper*, 16 S.W.3d 680, 682–83 (Mo.App. E.D. 2000) (vacating a sentence and remanding for new sentencing when transcript of defendant's prior offender hearing was missing); *Vogel v. Dir. of Revenue*, 804 S.W.2d 432, 434–35 (Mo.App. S.D.1991) (reversing for new trial because trial court did not make a record of evidence heard at trial).

■ However, when only part of the trial transcript is missing, courts are less likely to disregard the entire trial court proceedings. In *State v. Middleton*, 995 S.W.2d 443, 466–67 (Mo. banc 1999), the Missouri Supreme Court refused to reverse a criminal conviction due to defects in the trial transcript. In *Middleton*, the trial lasted three weeks, and the transcript was nearly 4,000 pages long, yet there were only thirty-four instances of omission in the transcript. *Id.* at 466. Most of the omissions were immediately clarified by the court reporter, and the remaining ones appeared to be just isolated words here and there in testimony that was immaterial to the defendant's appeal. *Id.* Accordingly, the Court found that the defects in the trial transcript did not prejudice Middleton's appeal. *Id.* at 467.

Similarly, in *State v. Borden*, 605 S.W.2d 88, 92 (Mo. banc 1980), the Court refused to reverse a criminal conviction where part of the transcript was missing. In *Borden*, the Court noted that the transcript was 1,068 pages long, and that the part of the transcript that was missing, while containing "the last part of the State's cross-examination as well as the redirect and re-cross-examination of defendant," was otherwise comprised of the rebuttal testimony of two prosecution witnesses, and the first part of the State's closing argument. *Id.* at 91. The Court also noted that Borden had failed to show due diligence and that she had "offered nothing to support her conclusory assertion that the omissions were prejudicial." *Id.* at 92.

On the other hand, in *Lynn v. Plumb*, 808 S.W.2d 439, 440 (Mo.App. S.D.1991), the court found prejudice and reversed for a new trial where one of three tapes of trial testimony, which included part of the testimony of one of the defendants and the entire testimony of two other witnesses, was missing and unable to be transcribed.

■ In this case, the State contends that the standard of review requires this court to find that Barber suffers no prejudice by the incompleteness of the trial transcript. In other words, the State argues that the jury heard whatever evidence was not recorded and transcribed and they convicted Barber; thus, the State argues that this missing testimonial evidence must not have been helpful to Barber's defense.[2] Were we to accept this argument, however, it would render transcripts of trial testimony meaningless—something with which we are not willing to agree. Rule 30.04(a) mandates inclusion of the trial transcript in the record on appeal

and does so for a reason—meaningful appellate review of material issues in dispute on appeal requires a transcript relating to the issues raised. Thus, we reject the State's conclusory argument and, instead, focus our analysis on whether we are missing crucial portions of the transcript relating to material issues in dispute on appeal.

■ In this case, we find it impossible to conduct meaningful appellate review of Barber's claimed trial court errors without the missing transcript of the bulk of Barber's testimony at trial. The missing portion of the transcript includes Barber's *entire* direct examination and much of his cross-examination. One of Barber's alleged errors is that his conversations with Shumaker should have been excluded by the attorney-client privilege. Key to determining whether an attorney-client relationship existed is testimony from the would-be client about his belief that the attorney from whom he seeks advice is capable of providing him with legal advice. *See State v. Longo*, 789 S.W.2d 812, 815 (Mo.App. E.D.1990). Likewise, the substance of Barber's purported testimony would give crucial context to the underlying claims of the sufficiency or insufficiency of evidence related to the State's case in chief and to Barber's trial defenses.

This court simply cannot conduct meaningful appellate review of Barber's claims on appeal without the ability to review the relevant portions of trial testimony of the very individual accused of criminal wrongdoing by the State. We are mindful that the State's attorney is not at fault for the mistake occurring when someone fails to press the "record" button on the recording

---

**2.** Notably, Barber's testimony constituted the bulk of *Barber's* case in chief at trial, not the *State's* case in chief. Thus, the missing testimony, while not necessarily relevant to the State's *prima facie* evidentiary showing, is crucially relevant to Barber's defense. For this reason, the missing testimony is material to the issues on appeal.

equipment at trial.[3] It is, however, the State that seeks to take Barber's freedom from him. Due process and fundamental fairness require that the State ensure the right of the accused to have a transcript of his testimony or, at least, a stipulation as to the specific content of his testimony below. Here, we have neither. Instead, through no fault of his own, Barber is unable to provide this court with the transcript of his testimony that he claims would support the basis for a finding of reversible error below that led to his criminal convictions. Barber has, accordingly, demonstrated prejudice requiring a new trial.

## Conclusion

Because it is impossible for this court to conduct a meaningful review of Barber's criminal trial without having a transcript that includes Barber's testimony, we reverse the judgment of the trial court and remand for a new trial.

JAMES EDWARD WELSH, Chief Judge, and GARY E. RAVENS, Special Judge, concur.

---

3. While we stop short of advocating the use of court stenography over tape recording equipment for trials, we note that choosing to use court stenography instead of tape recording equipment would tend to avoid the sorts of problems with which the parties and the court are now faced. Human error is inevitable. But, human error by a court stenographer usually does not lead to such large chunks of trial testimony being forever lost from the record below. *See State v. Middleton*, 995 S.W.2d 443, 466 (Mo. banc 1999).