MODIFIED 7/25/23



# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | **WD85530** |
| v. | ) | |
| | ) | **OPINION FILED:** |
| | ) | **June 27, 2023** |
| ROBERT A. WOOLERY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Pettis County, Missouri**
**The Honorable Robert L. Koffman, Judge**

**Before Division One:** W. Douglas Thomson, Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Robert Anthony Woolery appeals from a judgment convicting him of two counts of delivery of a controlled substance under § 579.020.[1] He raises five points on appeal. In his first two points, he argues the trial court plainly erred in failing to appoint counsel at his arraignment (Point I) and initial appearance (Point II). For his third point, Woolery asserts the court erred in failing to preserve a transcript or recording of his arraignment, thereby denying him meaningful appellate review of his right-to-counsel claim. In his

---

[1] All statutory references are to the Revised Statutes of Missouri, Cum. Supp. 2020.

fourth point, Woolery contends that the court plainly erred by misapplying the law when the court sentenced him to imprisonment rather than ordering a mental examination. Finally, for his fifth point, Woolery claims the court erred in denying his motion to suppress and allowing admission of evidence that he possessed and sold a controlled substance, because the detectives lacked authority to respond to emergency situations outside the city limits of Sedalia. Finding no error, we affirm.

**Background**

On November 10, 2021, the State charged Woolery by indictment in the circuit division with two counts of the class C felony of delivery of a controlled substance.

The State alleged that, on June 29, 2021, and again on July 12, 2021, Woolery knowingly delivered methamphetamine to a confidential informant (CI) working with the Sedalia Police Department. A warrant was issued for Woolery's arrest, and bond was set at "$ 200,000, c/s." The court arraigned Woolery on November 15, 2021; he appeared via video without counsel and pleaded not guilty. There is no transcript or recording of his arraignment.

Counsel entered an appearance on Woolery's behalf on November 22, 2021, and moved for bond reduction on December 3, 2021. On December 10, 2021, the court received evidence and heard argument on the motion, which the court denied.

Woolery waived his right to jury trial and was tried by the court. The day before trial, Woolery filed a motion to suppress, on constitutional grounds, any evidence that he possessed and sold a controlled substance, arguing that the Sedalia detectives lacked

jurisdiction to arrange drug buys outside the city limits. The court took the motion with the case.

In 2021, the Crime Resolution Unit of the Sedalia Police Department developed a plan to focus on low-to-mid-level drug dealers using vetted confidential informants; Woolery was identified as a subject of interest in the investigation. On June 29, 2021, and again on July 12, 2021, the unit organized a "controlled buy" from Woolery through the CI,[2] who had informed Detective Neva Overstreet that he could purchase drugs from "Tony." Through conversation and presentation of a police department booking photo, the CI identified Woolery as "Tony." The CI exchanged text messages with Woolery to set up the buys. On both occasions, after searching the CI's person and vehicle and issuing a recording device, Detective Overstreet and her colleagues followed the CI to the location where the CI and Woolery agreed to meet. The detectives observed the CI's vehicle pull into a driveway on Carlene Drive; Woolery got in the car, and it backed out of the driveway. The CI drove down Carlene Drive, turned north on Washington Street and then turned west on 32nd Street and traveled for a short distance before returning along the same route to the driveway on Carlene Drive, where Woolery exited the vehicle.[3]

_____

[2] Detective Overstreet explained that, in a "controlled buy," police meet with the confidential informant, document any messages arranging the purchase, issue the informant documented purchase money, search the informant's person and vehicle, and give the informant a recording device. A surveillance team then observes the entire transaction.

[3] On cross-examination, Detective Overstreet acknowledged that Carlene Drive is outside the Sedalia city limits, which begin at Washington Street and 32nd Street.

After each buy, the CI met up with the detectives for a debriefing. The CI gave Detective Overstreet a bag containing a substance that tested positive for methamphetamine. And the exchange occurred "after they started their route away from the drive," but the record does not indicate exactly where the vehicle was located when the exchange occurred.[4] Detective Overstreet did not make any arrests in relation to these drug buys or perform any other "enforcement" activities; she only conducted surveillance and secured evidence.

The court found Woolery guilty on both counts and issued findings of fact and conclusions of law denying Woolery's motion to suppress Detective Overstreet's testimony that Woolery was in possession of a controlled substance. The court concluded that the controlled buys did not violate Woolery's constitutional rights because the detectives were authorized to conduct the operations in Sedalia, which included 32nd Street, and Woolery voluntarily got into the CI's car and drove to 32nd Street to conduct the transactions.

At sentencing, the court heard testimony from Woolery and his father. The court sentenced Woolery as a persistent drug offender to fifteen years' imprisonment on each count, with the sentences to run concurrently. After sentencing, the court questioned Woolery about the performance of trial counsel. During that exchange, Woolery indicated that counsel had failed to request a mental examination, but Woolery did

---

[4] The recording device used during the June 29 controlled buy stopped working after two minutes, and the recording device used during the July 12 buy did not indicate when during the drive the exchange took place.

4

not explain why doing so would have been necessary nor did he describe any history of mental illness that would have supported such a request. Woolery appeals.

**Analysis**

Woolery raises five points on appeal. In his first two points, he argues the trial court plainly erred in failing to appoint counsel at his arraignment (Point I) and initial appearance (Point II). For his third point, Woolery asserts the court erred in failing to preserve a transcript or recording of his arraignment, thereby denying him meaningful appellate review of his right-to-counsel claim. In his fourth point, Woolery contends that the court plainly erred by misapplying the law when the court sentenced him to imprisonment rather than ordering a mental examination. Finally, for his fifth point, Woolery claims the court erred in denying his motion to suppress and allowing evidence that he possessed and sold a controlled substance, because the detectives lacked authority to respond to emergency situations outside the city limits of Sedalia.

Woolery acknowledges the claims he raises in Points I, II, and IV are not preserved for appellate review, and he requests plain error review of those claims under Rule 30.20.[5] We address Points I and II together.

---

[5] All Rule references are to the Missouri Supreme Court Rules (2021).

**A. The trial court did not err in failing to appoint counsel to represent Woolery at his arraignment (Point I) and initial appearance (Point II).**

In his first two points, Woolery argues the trial court plainly erred in failing to appoint counsel at his arraignment (Point I) and initial appearance (Point II).[6] Woolery bases both claims of error on Rule 31.02(a), which states, in pertinent part:

> In all criminal cases the defendant shall have the right to appear and defend in person and by counsel. If any person charged with an offense, the conviction of which would probably result in confinement, shall be without counsel upon his first appearance before a judge, it shall be the duty of the court to advise him of his right to counsel, and of the willingness of the court to appoint counsel to represent him if he is unable to employ counsel. Upon a showing of indigency, it shall be the duty of the court to appoint counsel to represent him. If after being informed as to his rights, the defendant requests to proceed without the benefit of counsel, and the court finds that he has intelligently waived his right to have counsel, the court shall have no duty to appoint counsel.

Woolery argues that the arraignment/initial appearance and bail hearing are critical stages of the criminal proceedings, and the failure to appoint counsel and/or certify compliance with Rule 31.02(a) resulted in manifest injustice and a miscarriage of justice, thereby violating his constitutional right to counsel.[7]

---

[6] Here, Woolery's arraignment *was* his initial appearance. Woolery's second point is somewhat confusing because it refers to both his initial appearance and his bail hearing, which were different proceedings. We address both here.

[7] Because the issue was not raised below, Woolery asks that we review Points I and II for plain error. It does not matter, however, whether the claim was raised below because the dispositive question before us is whether the arraignment here constituted a critical stage requiring counsel. If it was not a critical stage, there is no error, plain or otherwise. *See State v. Debler*, 856 S.W.2d 641, 652-53 (Mo. banc 1993) (finding no error from counsel's absence at a non-critical stage of the criminal proceedings).

Rule 31.02(a) does not support Woolery's claims that the court erred in failing to appoint counsel at his arraignment/initial appearance. The rule requires simply that, upon the first appearance before a judge by a person charged with a crime that could result in incarceration, the court advise the person of his right to counsel and the court's willingness to appoint counsel if the person cannot afford one. The rule does not address arraignment nor does it require suspension of an initial appearance until counsel has been appointed. In fact, the rule expressly contemplates that a defendant may "be without counsel upon his first appearance." Rule 31.02(a). Here, counsel from the public defender's office entered an appearance seven days after the arraignment/initial appearance, with no intervening court appearances by Woolery, which strongly suggests that, after being informed at arraignment of his right to counsel, Woolery sought and obtained services from the public defender's office, thereby negating any further obligation the court may have had under Rule 31.02(a) to appoint counsel for him. Therefore, there was no violation of Rule 31.02(a).

Woolery also relies on the Sixth Amendment. "[T]he Sixth Amendment guarantees a defendant the right to have counsel present at all critical stages of the criminal proceedings." *State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 606 (Mo. banc 2012) (quoting *Missouri v. Frye*, 566 U.S. 134, 140 (2012)). Critical stages are "those pretrial procedures that would impair defense on the merits if the accused is required to proceed without counsel." *Gerstein v. Pugh*, 420 U.S. 103, 122 (1975). "[W]hat makes a stage critical is what shows the need for counsel's presence." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 212 (2008).

7

Woolery contends that both the arraignment/initial appearance and the bail hearing are critical stages and, thus, a defendant has a constitutional right to counsel at those stages. For support, he plucks a quote from *Waters*, where the Missouri Supreme Court examined the balance between the "defendant's Sixth Amendment right to counsel at all critical stages of the proceeding" and "counsel's ethical obligation not to accept work that counsel does not believe he or she can perform competently." *Waters*, 370 S.W.3d at 607. In its discussion, *Waters* noted, as an aside, that "[c]ritical stages include arraignments." *Id.* at 606-07 (quoting *Frye*, 566 U.S. at 140).

But the mere label of "arraignment" does not create a "critical stage" requiring the assistance of counsel. Instead, a court must look to the underlying nature of the proceeding to determine whether it "shows the need for counsel's presence," *Rothgery*, 554 U.S. at 212, insofar as "[w]hat happens there may affect the whole trial," *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961). In noting that "critical stages include arraignments," *Waters* quoted *Frye*.[8] But, in making this assertion, *Frye* cited a case decided under Alabama law, where arraignment was undeniably a critical stage due to a number of defenses that needed to be pled at arraignment or risk being "irretrievably lost." *Frye*, 566 U.S. at 140 (citing *Hamilton*, 368 U.S. at 54). Because of the inherent risk involved under Alabama law, there was an obvious "need for counsel's presence" at arraignment, making it a critical stage. *See Rothgery*, 554 U.S. at 212. But, given "that state systems

---

[8] Like *Waters*, *Missouri v. Frye*, 566 U.S. 134 (2012), did not involve the right to counsel at arraignment. Instead, that case examined whether counsel's assistance may be considered ineffective when counsel fails to convey a favorable plea offer to the defendant before the defendant enters a guilty plea. *Id.* at 138.

of criminal procedure vary widely," *Gerstein*, 420 U.S. at 123, and arraignments have "differing consequences" in different jurisdictions, the *Hamilton* Court recognized that its holding was specific to Alabama arraignments. *Hamilton*, 368 U.S. at 54, 54 n.4 (noting that, while "[a]rraignment has differing consequences in the various jurisdictions[,] . . . in Alabama[,] it is a critical stage in a criminal proceeding").[9]

In Missouri arraignments, unlike those in Alabama, "[t]he right to assert any defense or objection is preserved and is not irretrievably lost" if not asserted at arraignment. *State v. Donnell*, 430 S.W.2d 297, 300 (Mo. 1968). Because Missouri arraignments do not carry the same risks and consequences as those in Alabama, *Hamilton*'s holding that arraignment was a critical stage of Alabama criminal procedure is not dispositive.

---

[9] Since *Hamilton*, the Court has repeatedly recognized the limits of *Hamilton*'s application. *See, e.g., United States v. Ash*, 413 U.S. 300, 312 (1973) (noting that *Hamilton*'s designation of arraignment as a critical stage was due to the Court's perception that counsel was needed to "advis[e] the accused on available defenses in order to allow him to plead intelligently"); *Adams v. Illinois*, 405 U.S. 278, 281, 283 (1972) (noting that *Hamilton* applied to only "some forms of arraignment" and "*Hamilton* denominated the arraignment stage *in Alabama* critical because defenses not asserted at that stage might be forever lost" (emphasis added)); *Coleman v. Alabama*, 399 U.S. 1, 7 (1970) (citing *Hamilton* for the proposition that "'critical stages' include the pretrial type of arraignment *where certain rights may be sacrificed or lost*" (emphasis added)); *McConnell v. Rhay*, 393 U.S. 2, 3 (1968) (noting *Hamilton*'s holding that an accused had the right to counsel "at *certain* arraignments" (emphasis added)); *Pointer v. Texas*, 380 U.S. 400, 402-03 (1965) (noting that cases like *Hamilton* are not "necessarily controlling as to the right to counsel" due to "significant differences in the procedures of the respective States"). Though the right to counsel undoubtedly *attaches* at arraignment, that does not automatically render arraignment a "critical stage" where counsel's presence is required. *Rothgery*, 554 U.S. at 212 (quoting *Michigan v. Jackson*, 475 U.S. 625, 629 n.3 (1986)) ("[T]he question whether arraignment signals the initiation of adversary judicial proceedings . . . is distinct from the question whether the arraignment itself is a critical stage requiring the presence of counsel.").

While we appreciate that we are "constitutionally bound to follow the most recent controlling decision of the Missouri Supreme Court," *Kisner v. Dir. of Revenue*, 644 S.W.3d 303, 305 (Mo. App. W.D. 2022) (internal citation omitted), *Waters* is not controlling on the question before us because *Waters* was not focused on the specific question Woolery raises:  whether, in Missouri, arraignment is a critical stage of a criminal proceeding requiring the presence of counsel.  Instead, *Waters* addressed whether the state public defender's office had the right to decline appointments once it exceeded its caseload capacity.  370 S.W.3d at 597.

But the Missouri Supreme Court has spoken—*repeatedly*—on the question Woolery poses.  And it has rejected his position every time.  *See State v. Grimm*, 461 S.W.2d 746, 753 (Mo. 1971) (The "absence of counsel upon arraignment does not violate constitutional guarant[e]es of [the] right to counsel, absent some action at that stage, prejudicial to the rights of the defendant."); *Collins v. State*, 454 S.W.2d 917, 919 (Mo. 1970) ("[A]rraignment is not a crucial stage of the proceedings when all that is done is enter a plea of not guilty, waiving no rights defendant might otherwise have."); *Montgomery v. State*, 461 S.W.2d 844, 846 (Mo. 1971) ("[T]he absence of counsel at arraignment is not per se a violation of any constitutional right."); *McClain v. State*, 448 S.W.2d 599, 601 (Mo. 1970) (same); *State v. Donnell*, 430 S.W.2d 297, 300 (Mo. 1968) (same and distinguishing *Hamilton*); *State v. Benison*, 415 S.W.2d 773, 775 (Mo. 1967) (same and distinguishing *Hamilton*).[10]

---

[10] Each of these cases was decided after *Hamilton* yet did not find *Hamilton* controlling on this point.  Additionally, *Waters* did not cite any of these cases, and we

In short, under Missouri law, "arraignment is not a critical stage in a criminal proceeding and thus, absent some prejudice to the accused, the absence of counsel at the arraignment does not violate due process." *State v. Barnard*, 820 S.W.2d 674, 679 (Mo. App. W.D. 1991), *abrogated on other grounds by State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993);[11] *see also Parks v. State*, 518 S.W.2d 181, 184 (Mo. App. 1974) (same). Accordingly, the only way Woolery's claim may succeed is if he suffered some recognizable prejudice from counsel's absence at his arraignment.[12]

---

will not presume that an opinion of the Court was overruled *sub silentio*. *Watson v. State*, 520 S.W.3d 423, 437 n.7 (Mo. banc 2017).

[11] Woolery's opening brief contains a statement that Rule 31.02(a) was revised in 1980, and the revision superseded any conflicting Missouri case law suggesting that counsel is not required at arraignment. But *State v. Barnard* undercuts that statement because *Barnard* was decided in 1991, eleven years after the rule revision, and *Barnard* held, consistent with earlier Missouri cases, that counsel is not required at arraignment. *State v. Barnard*, 820 S.W.2d 674, 679 (Mo. App. W.D. 1991), *abrogated on other grounds by State v. Bernard*, 849 S.W.2d 10 (Mo. banc 1993); *see also Tritico v. State*, 767 S.W.2d 563, 564 (Mo. App. E.D. 1988) (rejecting claim of ineffective assistance of counsel based, in part, on counsel's failure to appear at movant's arraignment because attorney's absence was not prejudicial where the arraignment consisted of a formal reading of the charge, and movant pleaded not guilty).

[12] We recognize that, in a recent decision, the Eastern District suggested "that arraignments constitute a critical stage for purposes of the right to counsel" and that "prejudice is presumed where counsel was absent at a critical stage of a criminal proceeding." *State v. Heidbrink*, ED 110697, 2023 WL 2977011, at *12-13 (Mo. App. E.D. Apr. 18, 2023), *reh'g and/or transfer denied* (May 15, 2023). But, given that the court ultimately affirmed Heidbrink's conviction because her initial appearance was *not an arraignment* and she had counsel at her actual arraignment, these assertions are mere dicta. Additionally, the Eastern District neither mentioned nor discussed any of the plethora of Missouri Supreme Court cases to the contrary, this court's decisions in either *Barnard* or *Parks v. State*, 518 S.W.2d 181, 184 (Mo. App. 1974), or its own earlier decision in *Tritico*, 767 S.W.2d at 564 ("Counsel's absence at an arraignment where a plea of not guilty is entered is not a per se violation of any constitutional right.").

At his arraignment, Woolery was read the charges, and he pleaded not guilty. "The entry, without more, of a plea of not guilty, as distinguished from a plea of guilty, without the presence of counsel could not have resulted in any disadvantage to defendant or advantage to the State." *Montgomery*, 461 S.W.2d at 846.[13] Woolery lost no rights or defenses at his arraignment, and the State gained no advantage over him. *See McClain*, 448 S.W.2d at 601 ("In short, the appellant lost nothing and the state gained no advantage by reason of lack of counsel at this stage (arraignment) of the proceedings."); *see also Beck v. Steele*, 4:12 CV 1300 DDN, 2014 WL 2558696, at *6 (E.D. Mo. June 6, 2014) (in context of post-conviction motion, finding no prejudice from lack of counsel at arraignment where nothing from the arraignment was used at trial). Counsel entered an appearance seven days later and could have raised any defenses at that time. And Woolery does not allege that the absence of counsel at his arraignment deprived him of a fair trial, and we do not see how, under the facts of this case, it could have. Thus, Woolery did not suffer recognizable prejudice from counsel's absence at arraignment.

In Point II, Woolery also makes a claim regarding his bail hearing, but the crux of that claim is not that he was unrepresented (because he was represented by counsel at his bail hearing) but, rather, that he was not heard on bail at his arraignment or within seven

_____

[13] *Cf. White v. Maryland*, 373 U.S. 59, 59-60 (1963) (holding that "[w]hatever may be the normal function of the 'preliminary hearing' under Maryland law, it was in this case as 'critical' a [stage] as arraignment under Alabama law" because "[w]hen arraigned at that preliminary hearing [the unrepresented defendant] pleaded guilty").

days thereafter, as required by Rule 33.05.[14]  But he does not raise that issue in his point relied on and, thus, it is not preserved for appellate review.  *Hale v. Burlington N. & Santa Fe Ry. Co.*, 638 S.W.3d 49, 61 (Mo. App. S.D. 2021) (quoting *Davis v. Wieland*, 557 S.W.3d 340, 352 n.10 (Mo. App. W.D. 2018)) ("Claims of error raised in the argument portion of a brief that are not raised in a point relied on are not preserved for our review.").

Moreover, when the court heard evidence and argument on his motion for bond reduction, the court denied the motion.  And his bond remained the same throughout the proceedings.  A claim that the result would have been different had he been heard on bail earlier is speculative.  Thus, Woolery cannot show that merely having counsel move for bond reduction sooner would have had any effect on his pretrial detention or, more importantly, on his defense, which is the ultimate objective of the right to counsel.  Finally, under Rule 33.09, a claim that "the court unlawfully detained the defendant" would properly be the subject of "remedial writ relief," not the subject of a claim on direct appeal.

Points I and II are denied.

---

[14] Rule 33.05 states, in relevant part,

> A defendant who continues to be detained after the initial appearance under . . . Rule 22.08 [Felonies—Initial Appearance Before the Court] shall have the defendant's detention or conditions of release reviewed at a hearing by the court . . . .  The hearing shall occur as soon as practicable but no later than seven days, excluding weekends and holidays, after the initial appearance, absent good cause shown by the parties or the court.

**B. Woolery was not denied meaningful review of his right to counsel claim by the absence of a transcript or recording of his arraignment (Point III).**

For his third point, Woolery asserts the trial court erred in failing to preserve a transcript or recording of his arraignment, thereby denying him meaningful appellate review of his right-to-counsel claim. Woolery bases his claim on Rule 31.02(b), which states, "If a defendant in a felony case appears for arraignment without counsel, and if appointment of counsel is waived by the defendant, the reporter shall prepare a transcript of such proceedings and file it in the case." Because his arraignment was not transcribed or recorded, Woolery posits that he cannot

> test the adequacy of the trial court's compliance with Rule 31.02 with respect to the requirement that the court shall advise [him] of the court's willingness to appoint counsel if he is unable to employ counsel upon a showing of indigency, and with respect to the requirement that the court must secure an intelligent waiver of the right to counsel after informing [him] as to his rights with respect to the appointment of counsel.

"[T]he rules of the Supreme Court of Missouri are reviewed *de novo*." *McGuire v. Kenoma, LLC*, 447 S.W.3d 659, 662 (Mo. banc 2014).

Rule 31.02(b) requires preparation of a transcript of an arraignment where a defendant in a felony case both appears without counsel and *waives appointment of counsel*. While it is clear from the docket entry of his arraignment that Woolery appeared without counsel, there is no indication whatsoever that he waived appointment of counsel. And, in fact, counsel was appointed seven days later. Thus, Rule 31.02(b)'s requirement to prepare a transcript was not triggered here.

While "[a]n appealing party is entitled to a full and complete transcript for the appellate court's review[,] . . . a record that is incomplete . . . does not automatically

14

warrant a reversal of appellant's conviction." *State v. Barber*, 391 S.W.3d 2, 5 (Mo. App. W.D. 2012). Woolery "is entitled to relief on this basis 'only if he exercised due diligence to correct the deficiency in the record *and* he was prejudiced by the incompleteness of the record.'" *Id.* at 5 (emphasis in original) (quoting *State v. Middleton*, 995 S.W.2d 443, 466 (Mo. banc 1999)). As evidenced by our discussion of Points I and II, above, the absence of a transcript or recording of Woolery's arraignment did not hamper our ability to meaningfully review those points as presented by him. And he offers no evidence to support his conclusory assertion that the lack of a transcript or recording was prejudicial. Point III is denied.

### C. Woolery cannot establish that manifest injustice or a miscarriage of justice resulted from his sentencing (Point IV).

In his fourth point, Woolery claims the trial court plainly erred by misapplying the law when the court sentenced him to imprisonment, rather than ordering a mental examination. "Under plain error review, we must determine whether the alleged error is 'evident, obvious, and clear error' [and] 'facially establishes substantial grounds for believing that manifest injustice or a miscarriage of justice' has occurred." *State v. Ratliff*, 622 S.W.3d 736, 745-46 (Mo. App. W.D. 2021) (quoting *State v. Campbell*, 600 S.W.3d 780, 788-89 (Mo. App. W.D. 2020)). "'[T]he defendant bears the burden of demonstrating manifest injustice entitling him to' plain error review." *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Oates*, 540 S.W.3d 858, 863 (Mo. banc 2018)).

15

In support of his claim, Woolery cites §§ 552.020-552.040, which, together, address both lack of mental capacity to assist in his defense and lack of culpability due to mental disease or defect. Thus, Woolery's fourth point is broad enough that he could be arguing he lacked culpability in the commission of the crimes or he lacked mental fitness to stand trial. Either way, there is a presumption in favor of mental capacity and fitness, and the burden to overcome that presumption rests with the defendant. §§ 552.020.8 and 552.030.6. The issue of whether a defendant lacked culpability or the mental capacity to assist in his defense is for the trier of fact to decide upon introduction of substantial evidence. *Id.*

Here, Woolery offered no evidence indicating that he lacked culpability due to a mental disease or defect or that he lacked sufficient present ability to consult with counsel and understand the proceedings against him. And the record in this case is devoid of any such evidence. Thus, because Woolery failed to "facially establish[] substantial grounds for believing that manifest injustice or a miscarriage of justice" resulted from the alleged error, we decline to engage in plain error review. *Ratliff*, 622 S.W.3d at 745-46 (quoting *Campbell*, 600 S.W.3d at 788-89). Point IV is denied.

### D. Woolery's claim regarding denial of his motion to suppress was not preserved for appellate review (Point V).

In his final point, Woolery claims the trial court erred in denying his motion to suppress and allowing admission of evidence that he possessed and sold a controlled

16

substance because the detectives lacked authority under § 70.820.2 to respond to emergency situations outside the city limits of Sedalia.[15]

This claim goes beyond the issue Woolery raised in his motion to suppress, which was that admission of evidence that he possessed and sold a controlled substance would violate his constitutional rights because the detectives lacked jurisdiction to arrange drug buys outside city limits. Whether the trial court erred in denying the suppression motion and admitting the evidence because the detectives lacked authority under § 70.820.2 to respond to emergency situations outside the city limits "is an issue raised for the first time on appeal, and '[i]ssues raised for the first time on appeal are not preserved for appellate review.'" *McLemore v. State*, 635 S.W.3d 554, 563 n.3 (Mo. banc 2021) (quoting *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 397 n.10 (Mo. banc 2018)); *see also State v. Estes*, 743 S.W.2d 118, 120 (Mo. App. W.D. 1988) ("An objection made at trial cannot be broadened or enlarged on appeal."). And Woolery does not seek plain error review of this claim under Rule 30.20. Point V is denied.[16]

---

[15] Section 70.820.2 states,

> Before a police officer shall have the authority to respond to an emergency situation outside the boundaries of the political subdivision from which the officer's authority is derived . . . , the authority shall be first authorized by . . . the governing body of the political subdivision from which the officer derives such officer's authority and by the governing body of the political subdivision in which the emergency situation is alleged to be occurring . . . .

[16] Even if this point were properly before us, we would deny it. Woolery does not assert that the controlled buys were emergency situations, nor does he explain how Detective Overstreet responded to the buys in a manner that would violate § 70.820.2. Instead, Woolery objects to Detective Overstreet testifying about the buys, which she

**Conclusion**

Finding no error, plain or otherwise, the trial court's judgment is affirmed.

_____
Karen King Mitchell, Judge

W. Douglas Thomson, Presiding Judge, and Lisa White Hardwick, Judge, concur.

---

observed. Detective Overstreet is entitled to testify about her observations. *See State v. Estes*, 743 S.W.2d 118, 119 (Mo. App. W.D. 1988) (holding that a State Highway Patrol officer could testify about a drug sale that he observed regardless of whether he was acting under statutory authority or as a private citizen).

18